■ JOHN JOHNSON et al., Appellants, v NEW YORK CITY TRANSIT AUTHORITY, Respondent.—Judgment, Supreme Court, Bronx County (Herbert Shapiro, J.), entered March 12, 1985, which set aside a jury verdict in plaintiffs' favor in a personal injury action and dismissed the complaint, reversed, on the law, the defendant's motion to set aside the jury verdict denied, the verdict reinstated, and the case remitted to the Supreme Court, Bronx County, for entry of judgment in favor of plaintiffs, without costs. The appeal from the decision of February 14, 1985 is dismissed without costs as nonappealable.

On the evening of July 30, 1979, at 9:30 P.M., plaintiff John Johnson was standing at Kingsbridge Road and Jerome Avenue in The Bronx, beneath the elevated tracks, waiting to hail a taxicab. As a train overhead was pulling out of the station, Johnson heard a clinking sound, like an object hitting the ground, at which time he lost consciousness and slumped to the pavement.

Two disinterested witnesses, who were in a automobile waiting for a traffic light to change, observed Johnson's head snap back, and then saw him fall to the pavement with blood streaming from the back of his head. They immediately parked and ran to his aid, and noted that the back of Johnson's head seemed to be open, "it felt mushy, like a sponge effect." They remained with Johnson, pressing a cloth compress to the back of his head, until the police came and rushed him to the hospital without waiting for an ambulance, because of the severity of the wound. The hospital emergency room doctor noted lacerations of Johnson's scalp and a depressed fracture of the right parietal bone. Later X rays revealed that the fracture was linear and nondepressed.

The two eyewitnesses, who had accompanied Johnson to the hospital, returned to the scene of the incident about 30 minutes later, because one of them thought he had seen something resting on the pavement while they were rendering

first aid. At the scene, approximately two feet away from where Johnson's body had fallen, they discovered a piece of metal which was identified at trial as the broken flange of a subway train brake. The object was curved, 12 inches long, 3 inches wide, and weighed just over six pounds. Defendant conceded that this type of brake shoe was ordinarily a part of trains that traversed the Woodlawn-Jerome line in Bronx County at the time of the occurrence.

Defendant's engineer witness testified that the brake shoe fragment, if it had fallen approximately 24 feet from the elevated tracks to strike the plaintiff's head, would have been moving at 25 miles per hour and would have struck with the energy of 150 foot-pounds, the equivalent of a force generated by a 25-pound sledgehammer when swung down to crack pavement. This latter testimony was the basis for defendant's argument that the brake shoe would have crushed Johnson's skull, killing him, and that since he suffered only a fracture, the evidence did not support the jury's finding that the brake shoe caused his injury.

The trial court accepted this argument, noting in addition that the brake shoe did not contain any fragments of blood or hair, and that the witnesses had not actually seen the brake shoe strike plaintiff's head. Thus, the trial court reasoned that plaintiff did not adequately exclude the possibility that an unknown object thrown from the platform or a passing train caused his injury, or that he had merely fainted and struck his head on the pavement. We observe, however, that it was nighttime at the time of the incident, which would explain the witnesses not seeing the dark-colored brake shoe as it fell at high speed, and the sudden snapping back of plaintiff's head and the fast pouring of blood from his injury is more consistent with his being struck with a heavy object, such as the brake shoe, than with a fainting episode. That finding by the jury is confirmed by the "clinking" sound which plaintiff heard immediately before he lost consciousness, and the very close proximity of the brake shoe to where plaintiff had fallen.

In *Schneider v Kings Highway Hosp. Center* (67 NY2d 743, 744-745), the Court of Appeals succinctly summarized the criteria to be applied in determining the adequacy of circumstantial evidence in negligence cases:

"To establish a prima facie case of negligence based wholly on circumstantial evidence, '[i]t is enough that [plaintiff] shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred' *(Ingersoll v Liberty Bank,*

278 NY 1, 7). The law does not require that plaintiff's proof 'positively exclude every other possible cause' of the accident but defendant's negligence *(ibid.* [quoting *Rosenberg v Schwartz,* 260 NY 162, 166]). Rather, her proof must render those other causes sufficiently 'remote' or 'technical' to enable the jury to reach its verdict based not upon speculation, but upon the logical inferences to be drawn from the evidence *(see, e.g., Spett v President Monroe Bldg. & Mfg. Corp.,* 19 NY2d 203, 205; *Markel v Spencer,* 5 NY2d 958, *affg without opn* 5 AD2d 400).

"Although plaintiff may in her attempt to meet that burden include proof tending to negate the significance of other possible causes *(see, Spett v President Monroe Bldg. & Mfg. Corp.,* 19 NY2d, at pp 204-205, *supra),* we have on numerous occasions upheld or reinstated a jury's verdict where the logic of common experience itself, as applied to the circumstances shown by the evidence, led to the conclusion that defendant's negligence was the cause of plaintiff's injury."

Applying these criteria to the facts developed at trial, and giving the plaintiffs the benefit of every favorable inference which can reasonably be drawn from those facts *(Betzag v Gulf Oil Corp.,* 298 NY 358, 364), we find the evidence sufficient to support the jury's verdict. As to plaintiffs' argument that the amount of damages awarded was shockingly inadequate, we perceive no basis in the record for disturbing the jury's determination. *(See, Reich v Mater Serv. Co.,* 39 AD2d 737.)* Concur—Sandler, J. P., Carro, Asch and Ellerin, JJ.