SINTHONIA NESBIT, as Administratrix of the Estate of JAMES NESBIT, Deceased, Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Respondent.

First Department, August 22, 1991

## APPEARANCES OF COUNSEL

*Elliot H. Fuld* of counsel *(Norman J. Mordkofsky* with him on the brief; *Goldstein, Weinstein & Fuld,* attorneys), for appellant.

*Thomas Michael Laquercia* of counsel *(Patrick A. Lyons* and *Bryan M. Rothenberg* with him on the brief; *Smith & Laquercia,* attorneys), for respondent.

**OPINION OF THE COURT**

ASCH, J.

■ This is a case which as been tried twice. A verdict for the defendant in the first trial was vacated by the Trial Justice *(affd* 130 AD2d 986). The second trial resulted in a jury verdict in favor of the plaintiff but that Trial Justice set aside the plaintiff's verdict and directed judgment for the defendant. It is unfortunate that the parties have been subjected to the trauma and expense of this extensive litigation. However, we reinstate the jury determination in favor of the plaintiff on more substantial grounds than these. The Trial Justice erred in granting the motion of the Transit Authority to set aside the jury verdict in favor of plaintiff and in directing judgment for defendants.

The evidence adduced at trial reveals that on October 28, 1981, James Nesbit and a friend were walking on a sidewalk located on the eastern side of Jerome Avenue, the Bronx, when Nesbit was struck on the head by a bar and chain. Nesbit suffered a depressed skull fracture as a result of the injury. At the time of the incident, an IRT No. 4 train passed by on the elevated subway structure which runs some 28 feet above the street. It was reported to police and transit authorities that the chain and bar may have fallen from that train.

An investigation by the Transit Authority (TA) determined that the train which had passed over Jerome Avenue at the time of the incident was missing a safety chain between subway cars Nos. 6600 and 6671. The safety chain, which weighed about 33 pounds, was described as containing three chains approximately 12 inches apart on one side containing "S" hooks attached to eyerings that are permanently attached to a bar. It could be removed from the holes on one train when necessary. The purpose of the chain between the cars was to prevent passengers from exiting or entering the trains between the cars or falling off. Although the subject safety chain and bar was recovered at the scene by TA police, it was handed over to the New York City Police Department (NYPD) Property Clerk's office for vouchering. It was ultimately destroyed by the NYPD on January 31, 1984 and thus not available for inspection or analysis. At trial, plaintiff relied on

the above-noted facts and the TA's accident report which made reference to an object having fallen from an elevated track and having struck decedent on the head to establish defendant's negligence.

As noted above, the subject safety chain was destroyed in 1984 without either side having had the opportunity to scientifically examine it to determine if it had become dislodged from the cars due to improper or poor maintenance (such as rust), or had been pried loose from the moving train and thrown by a vandal. TA witnesses noted that before each train is placed into service, the motorman and conductor are given an hour to inspect their train to make sure all systems, including safety chains, are properly set up. Following a report of the accident, TA personnel discovered that car No. 6600 was missing the complete safety chain except for an "S" hook used to secure it to the body of the car. Mr. Ernest Buser, a quality control TA inspector, stated that upon examining the "S" hook, it appeared to have been spread open as if pulled apart and was not worn.

In support of its defense that the incident was the direct result of an intervening criminal act, defendant TA called civilian engineer Dr. John Rumpf as an expert witness. Based on photographs and diagrams of the accident site, Dr. Rumpf made several findings. In view of the weight of the safety chain, height and distance of the structure, Dr. Rumpf concluded that it would take a horizontal velocity of approximately 12½ miles per hour for the chain to have struck Mr. Nesbit, which he postulated could only have been accomplished by a person throwing a chain. Although Dr. Rumpf discounted the possibility that the force to project the chain laterally could have been provided by the movement of the train, Dr. Rumpf admitted that the chain could have fallen on the rail with such force as to ricochet, spin over and spin out to the street below. Finally, Dr. Rumpf stated, that the average person could not exert enough pressure to force open each of the "S" hooks without the use of a tool.

The court, adequately, but somewhat inarticulately, charged on the theory of negligence, based upon the inference created by the doctrine of res ipsa loquitur. The jury rendered a general verdict in favor of plaintiff against defendant, in the sum of $70,000 in damages, and defendant successfully moved to set aside the verdict on the ground it was against the weight of the competent evidence. Then, the trial court concluded that it had erroneously charged the jury as to the

permissible inference of negligence created by the doctrine of res ipsa loquitur. It ruled: "Plaintiff did not establish control of the safety chain by the Transit Authority in sufficient exclusivity to fairly rule out the chance that the plaintiff was injured by the safety chain which had been handled by one or more Transit Authority's passengers * * * Secondly, the occurrence does not really contain with it a sufficient basis for an inference of negligence on the part of the Transit Authority. It must be at least more likely than not that the Transit Authority was negligent in causing plaintiff's injury. This does not appear to be the fact in this case."

The statement of law by the court, as well as its finding, that the "exclusive control" criterion had not been established, were erroneous.

In the present case, it was undisputed that James Nesbit was struck by a safety chain assembly which came from between subway cars 6600 and 6671 on the IRT No. 4 train traveling above the decedent on October 21, 1981. Defendant's own witnesses and evidence established that the safety chain was a component of the IRT's subway car operated and controlled by the Transit Authority, which was traveling north above Jerome Avenue.

The Transit Authority sought to convince the jury that the safety chain had to have been pried loose by an unknown passenger/vandal who hurled it off the train onto the street below. To prove that, defendant presented an engineer who stated, on the one hand, that the safety chain had to have been pried loose, by someone with a tool, but who admitted on the other hand, that the negligent maintenance of the chain together with the movement of the train could have resulted in its being plummeted down onto James Nesbit.

The jury obviously did not accept the Transit Authority's theory of the "phantom vandal". It is most difficult to accept the hypothesis that a person on a moving train had the tools or inclination to stand between moving cars to force apart the chain, in view of the other passengers while the train was on this journey. The jury considered the factual issues before it and held for the plaintiff. The trial court abused its discretion by substituting its posttrial opinion for that of the jury's since there was enough evidence to support the verdict *(Kozlowski v City of Amsterdam,* 111 AD2d 476).

■ The doctrine of res ipsa loquitur creates a permissible inference of negligence and causation from an occurrence

which does not ordinarily happen without negligence. Without more, it is sufficient to make out a prima facie case permitting submission to a jury, which may infer negligence and conclude that the preponderance of proof is with plaintiff. Use of res ipsa does not relieve plaintiff of the burden of proof and the defendant is under no obligation to offer any countervailing proof in rebuttal *(see, Weeden v Armor Elevator Co.,* 97 AD2d 197, 204). The submission of a case on this theory is generally warranted only when plaintiff has established that: (1) the event was of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of defendant, and (3) it was not due to any voluntary action or contribution on the part of plaintiff. *(Veltri v Stahl,* 155 AD2d 287.)

The facts before this court are not similar to cases where the proof shows the only manner in which the accident could have occurred is by the intervention of a third party/vandal *(see, Ebanks v New York City Tr. Auth.,* 70 NY2d 621). In this case, the evidence and the admissions of defendant's own witnesses established to a sufficient degree, and to the satisfaction of the jury, that the chain assembly fell from the train due to defendant's negligence.

The jury viewed incident reports authorized by Transit Authority employees who, after investigating the incident and inspecting the subject subway cars and the scene of the accident, stated that the safety chain "fell" from the train. Significantly, they did not use the phrase "was thrown" from the train.

Additionally, defendant's expert, Dr. Rumpf, acknowledged that the average passenger would not be strong enough to exert the required pressure of 37 pounds needed to pry that safety chain assembly loose. He further conceded that as a result of negligent maintenance, the components on the chain could have rusted out causing it to disengage without an outside agent. Additionally, Dr. Rumpf never examined the subway cars in question to determine if the attachments connected to a safety chain were rusted or worn away. The expert further admitted that the curve of the subway tracks at the location of the accident and worn train wheels could very well cause the safety chain to swing out and, if disengaged, fly off the car onto the street below.

It is to no avail that the Transit Authority may have given

its workers the opportunity to regularly inspect the subway cars, and the components therein, before or after their daily use. If the chain was pried loose, it could have taken place only at the maintenance yards. Hence, the jury obviously believed that the workers either did not inspect at all, or they inspected in a negligent manner.

In its decision granting defendant's motion to set aside the verdict, the trial court focused solely on the fact that plaintiff had not established "exclusive control" of the safety chain. In *Johnson v New York City Tr. Auth.*, (129 AD2d 424, 425, *lv denied* 70 NY2d 605) a pedestrian brought a personal injury action against the New York City Transit Authority arising out of an incident wherein an object allegedly hit the pedestrian on the head, rendering him unconscious, while he was walking beneath the elevated tracks, under circumstances and location very similar to those before this court. The Bronx Supreme Court set aside the jury verdict in favor of the pedestrian and dismissed the complaint. We reversed the trial term, holding that the circumstantial evidence was sufficient to support the verdict.

 It is correct that defendant must have control of the instrumentality causing the injury for res ipsa loquitur to apply. However, the trial court misapprehended the nature of the control required. "The exclusive control requirement of res ipsa loquitur is not an absolutely rigid concept, but is subordinate to its general purpose, that of indicating that it was *probably* the defendant's negligence which caused the accident in question. Res ipsa loquitur is not applicable where it is at least *equally* probable that the negligence was that of another. The *possibility* of other means need not be altogether excluded, however." (79 NY Jur 2d, Negligence, § 132, at 487-488 [emphasis added].)

Here, plaintiff certainly could rely on the doctrine of res ipsa loquitur to establish a prima facie case from which negligence could be inferred as the trial court initially held.

While defendant's theory was that a vandal had pryed loose this bar and thrown it from the train, defendant's own evidence showed a person could not pry open the safety chain from its permanent position without the use of tools. No evidence of tampering or tools were found between the cars with the missing chains, and no witnesses ever testified to seeing some unidentified vandal tampering with the chain between cars Nos. 6600 and 6671. The fact presented to this

jury was that a safety chain came hurtling from an elevated train onto a pedestrian's head. Certainly, one can infer it was "probably" defendant's negligence which caused the occurrence, and the evidence shows it was *not* "equally probable" that the negligence was that of another without any requirement that other possibilities be excluded altogether. Accordingly, such a res ipsa charge was warranted.

■ The concurrence states that "the trial court seemingly charged the jury in abstract terms on two separate theories of recovery: general negligence as well as the theory of *res ipsa loquitur,* and since the jury delivered a general verdict, it appeared somewhat dubious as to which theory of recovery the jury accepted". However, negligence established by res ipsa loquitur was the plaintiff's sole theory of liability, as conceded by defendant. We find that the trial court's charge clearly communicated plaintiff's theory to the jury, and that it did not charge "two separate theories of recovery", as suggested by the concurrence. Therefore, a general verdict was entirely appropriate. Res ipsa is merely an evidentiary rule allowing the jury to infer negligence from circumstances when the event would not ordinarily occur in the absence of negligence. *(See,* Prosser and Keeton, Torts § 39, at 244 [5th ed].)

Accordingly, the order and judgment (one paper) of the Supreme Court, Bronx County (David Levy, J.), entered on or about October 25, 1989, setting aside a jury verdict in favor of plaintiff and directing judgment entered in favor of defendant, should be reversed, on the law and facts, and the verdict for plaintiff reinstated, without costs or disbursements.

WALLACH, J. (concurring). As a preliminary matter, one of the difficulties which appeared to be presented by this appeal is that the trial court seemingly charged the jury in abstract terms on two separate theories of recovery: general negligence as well as the theory of res ipsa loquitur; and since the jury delivered a general verdict, it appeared somewhat dubious as to which theory of recovery the jury accepted, or, indeed, whether the jurors saw fit to embrace both.* Since plaintiff's proof was insufficient as a matter of law to support general negligence, and were we to take a final view of the case as

---

* In quoting a portion of this sentence, my colleagues appear to apprehend it as a statement of my position in this case. On the contrary, it formulates what I regard (and they do not) as the seminal problem in the record which, unless satisfactorily resolved, would require a new trial. My ultimate conclusion, after the analysis, *infra,* is the same as theirs.

irreparably cast by the court's charge in that uncertain posture, our proper course, following reversal of the trial court's dismissal, would necessarily be to order a new trial *(Davis v Caldwell,* 54 NY2d 176).

A closer study of the record, however, permits us to sustain the verdict, because before taking up the res ipsa theory in its charge, the trial court effectively withdrew from the jury's consideration the only negligence theory actually litigated between the parties, with the following instruction: "Now, Defendant claims he acted reasonably, and that the chain was thrown, and *if it was thrown, I'll tell you, as a matter of law, the Transit Authority would not be negligent.* Their negligence would be if it somehow fell from the train, and I'll tell you about that in a moment." (Emphasis added.)

We are satisfied that this direction eliminated the sole general negligence claim advanced by plaintiff, namely, that defendant failed to employ due care to prevent a mischief-minded passenger from prying the safety chain loose and hurling it from the train.

The trial record satisfies me that the only issue left for determination by the jury was whether the plaintiff's evidence established a recovery upon the theory of res ipsa. In *Ebanks v New York City Tr. Auth.* (70 NY2d 621, 623), the Court of Appeals succinctly stated the elements of res ipsa loquitur: " '(1) the event must be of a kind which ordinarily does not occur in the absence of someone's *negligence;* (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' " (Emphasis added.)

It is true that the court, in its charge, referred to negligence in the following familiar language from the Pattern Jury Instructions *(see,* PJI 2:10): "Negligence is a failure to use that degree of care which a reasonably prudent person would have used under the same circumstances. It may arise for acting in a way which a reasonably prudent person would not have acted under the same circumstances, or on the other hand, from failing to act in a way in which a reasonably prudent person would have acted under the same circumstances."

However, when the structure of the charge is considered as a whole, it becomes apparent that this instruction did not articulate a separate issue, but simply supplied a working definition of the concept of negligence to be applied by the jury in evaluating the res ipsa claim. We can be confident of

that conclusion, because the court's reference to general negligence was unaccompanied by any elaboration of, or linkage to, any factual contention by either party.

Thus we reach the question, decided adversely to plaintiff by the trial court as a matter of law, of whether this verdict can be permitted to stand on the theory of res ipsa loquitur. As to this question, the only one decided by the jury, I agree in the reversal of the court's dismissal of plaintiff's case and the reinstatement of the verdict in plaintiff's favor.

I have written separately here only because I believe the majority opinion fails to come to grips with the most serious problem in the case, apparently comforted by a purported "concession" in defendant's brief on appeal that res ipsa was plaintiff's sole theory of recovery. In reviewing the viability of a verdict, the question is not what a party concedes on appeal, but rather what instructions the jury actually received from the Trial Judge. Ironically here, it is the plaintiff who strongly urges, in *her* brief, that the jury verdict can properly rest both on res ipsa *and* negligence. Were we to accept that contention at face value, we would be obliged to reverse and remand. The point is that the vagaries of appellate argument, often hypothetical in content, do not serve to alter what actually transpired at trial as reflected by the record. Only from that record am I able to conclude that the case was actually submitted to the jury on the sole theory of res ipsa loquitur.

Candor compels me to concede that I am affected by the lengthy history of this lawsuit, arising from the skull fracture sustained by this blameless pedestrian, now deceased from causes unrelated to the action, for which the jury has made a relatively modest $70,000 award. The accident itself is a decade old, and Mr. Nesbit has not lived to see either the fruition or frustration of his recourse to the judicial system. (The first trial of this case resulted in a verdict for defendant; that verdict was vacated by Justice Callahan, a ruling we affirmed on our remand for this trial in May 1987 [130 AD2d 986].) To condemn this case to yet a third trial would be to place it in contention for the *Jarndyce v Jarndyce* Bleak House award in the negligence field.

MURPHY, P. J., CARRO and KUPFERMAN, JJ., concur with ASCH, J.; WALLACH, J., concurs in a separate opinion.

Order, Supreme Court, Bronx County, entered on or about October 25, 1989, reversed, on the law and the facts, without costs or disbursements, and the verdict for plaintiff reinstated.