■ FLOR PAVON et al., Appellants, v LEWIS RUDIN et al., Doing Business as 345 PARK COMPANY, et al., Respondents. [679 NYS2d 27] —Order, Supreme Court, New York County (Diane Lebedeff, J.), entered July 14, 1997, granting defendants-respondents' motion and cross-motion for summary judgment dismissing the complaint, and dismissing as academic the Rudin defendants' cross-motion for summary judgment on the issue of the Bristol-Myers defendants' duty of indemnification, unanimously reversed, on the law, without costs, the motion and cross-motion for summary judgment against plaintiffs denied, the complaint reinstated, and the Rudin defendants' cross-motion for summary judgment on the issue of indemnification granted.

Plaintiff Flor Pavon (plaintiff) was employed by the National Cleaning Service as an office cleaner. She was assigned to clean the offices of defendant Clairol Product Evaluation Salon (Clairol Salon) after business hours. The Clairol Salon is a hair salon, testing center and product evaluation center located in Manhattan at 345 Park Avenue. It is operated by defendants Bristol-Myers Company, Bristol-Myers Squibb Company, and Clairol Inc. (The Clairol Salon and these defendants are collectively referred to hereafter as Bristol-Myers.) The building is owned by defendants Lewis Rudin, Jack Rudin and Samuel Rudin, doing business as 345 Park Company, and Rudin Management Co., Inc. (collectively referred to as Rudin), and the premises occupied by Clairol Salon are leased to Bristol-Myers (Bristol-Myers and Rudin collectively referred to as defendants).

On December 31, 1991, plaintiff sustained severe head, neck and back injuries when she was allegedly struck on the head by a heavy door as she was leaving an interior room of the Clairol Salon. The door apparently dislodged after the top pivot hinge holding it to the frame broke or tore from the door frame. The door in question had been installed by an outside general contractor when the premises were renovated by Bristol-Myers. The door was about seven feet high and was supported by pivot hinges at the top and the bottom. Pivot hinges basically consist of pins inserted into the upper and lower horizontal surfaces of a door and into the floor and door casing.

Plaintiff commenced the instant action against Bristol-Myers

and Rudin for negligence.[1] At her deposition, she testified that she had cleaned the area in question for two years preceding the accident and had never noticed anything amiss with the door. Rudin's building manager, Eugene Simmons, and Bristol-Myers' project coordinator for construction, Robert Laevsky, also testified in their depositions that they had received no complaints about the door. Mr. Laevsky was the one responsible for the everyday maintenance of the Clairol Salon, though the lease also gave Rudin's representatives the right to re-enter the premises to make repairs. Mr. Laevsky testified that after the accident, he submitted the work orders to have the door fixed.

Bristol-Myers moved for summary judgment dismissing the complaint, arguing that plaintiff could not establish a prima facie case because Bristol-Myers had had no notice of the alleged defective condition and had not installed or manufactured the door. Rudin cross-moved for summary judgment and, alternatively, for judgment against Bristol-Myers on Rudin's cross-claim for contractual and common-law indemnification.

In opposition, plaintiffs put forward, *inter alia*, a res ipsa loquitur theory. The supporting affidavit of their expert Michael Kravitz, a professional engineer, opined that the accident had several possible causes: the pivot hinge "was either of insufficient strength to sustain the load of the door (i.e. the wrong pivot hinge for this door), improperly installed or defective."

The IAS Court granted summary judgment to defendants and dismissed the complaint. Plaintiffs had failed to refute defendants' showing that they had neither actual nor constructive notice of the defect. Their Labor Law claims were also dismissed because plaintiffs were advancing a theory not alleged in the complaint, without first seeking to amend their complaint, after the Note of Issue had been filed.

Finally, the court held that plaintiff could not get to the jury on a res ipsa loquitur theory because she had failed to demonstrate that defendants had exclusive control of the door and pivot. Since the door was used by numerous employees and members of the public every day, the court reasoned, exclusivity of control could not be established. We find the court's reasoning on this point to be in error, and accordingly reverse and reinstate plaintiffs' complaint.

The doctrine of res ipsa loquitur permits an inference of

---

1. Co-plaintiff Manuel Pavon, plaintiff's husband, also asserts a claim for loss of consortium, which is derivative of plaintiff's claim and thus will not be separately discussed.

negligence to be drawn from the very occurrence of a certain type of accident and the defendant's relation to it. If the requirements for application of the doctrine are met, a plaintiff is allowed to rest her case on circumstantial evidence when the specific cause of the accident is unknown (*Kambat v St. Francis Hosp.*, 89 NY2d 489, 494). Res ipsa loquitur creates a prima facie case of negligence sufficient for submission to the jury, which is permitted but not required to infer negligence (*Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226).

To demonstrate the existence of a triable issue by relying on a res ipsa loquitur theory, the plaintiff must establish three things: (1) the accident is of a kind that ordinarily does not occur in the absence of someone's negligence; (2) the instrumentality causing the accident was within defendant's exclusive control; and (3) the accident was not due to any voluntary action or contribution by plaintiff (*supra*). However, plaintiff need not conclusively eliminate all other possible explanations. It is enough to present evidence from which a reasonable jury could conclude that it is more likely than not that defendant's negligence caused the injury (*Kambat v St. Francis Hosp.*, *supra*, at 494).

The first and third elements of plaintiff's res ipsa loquitur claim were clearly established. Doors mounted on pivot hinges do not generally fall in the absence of negligence (*e.g.*, improper installation, maintenance or repair), and the mere act of opening the door does not make the accident plaintiff's fault or put the door under plaintiff's control (*Mott v B. Gertz, Inc.*, 146 NYS2d 521, 523).

The second element, exclusive control of the instrumentality of the accident, " 'is not an absolutely rigid concept, but is subordinate to its general purpose, that of indicating that it was *probably* the defendant's negligence which caused the accident in question' " (*Nesbit v New York City Tr. Auth.*, 170 AD2d 92, 98, quoting 79 NY Jur 2d, Negligence, § 132, at 487-488). It is not necessary for plaintiff to rule out all other possible causes, only to show that they are less likely (*supra*).

Thus, for example, we held in *Nesbit* that res ipsa loquitur applied where a safety chain attached to a heavy bar came loose from an elevated train and fell on a person walking below. To contradict plaintiff's inference that the chain had become dislodged due to improper maintenance (*e.g.*, rust), defendant suggested that a vandal could have detached the chain and thrown the bar from the train, but (as in the instant case) the average person would have required tools and equipment to tamper with the instrumentality of the accident, and no evi-

dence of tampering was shown (*supra*, at 94-95). Similarly, defendants herein have not shown that anyone tampered with the upper pivot hinge, which was not at floor level and which would have required a conspicuous stepladder to reach. The IAS Court implicitly demanded certainty instead of relative probability, and thereby applied the exclusivity test in too strict a fashion.

In addition, the IAS Court improperly assumed that the "instrumentality" in question was the door which fell on plaintiff, rather than the pivot hinge which caused the door to fall. The appropriate target of inquiry is whether the broken component itself was generally handled by the public, not whether the public used the larger object to which the defective piece was attached.

This conclusion is supported by case law applying res ipsa loquitur to accidents involving items exposed to significant public traffic, where the specific mechanism that malfunctioned was not handled by the general public (*e.g.*, *Wen-Yu Chang v Woolworth Co.*, 196 AD2d 708, 709 [plaintiff's leg caught in gap between stairs of escalator]; *Nesbit v New York City Tr. Auth.*, *supra* [plaintiff's decedent struck by bar that fell from elevated train when safety chain came loose]; *Finocchio v Crest Hollow Club*, 184 AD2d 491, 492 [restaurant chair collapsed under plaintiff when chair legs separated from seat]). By contrast, in the cases relied on by defendants and the IAS Court, the defective piece was directly handled by many members of the public (*e.g.*, *Dermatossian v New York City Tr. Auth.*, *supra*, at 228 [grab handle on bus]; *Troisi v Merit Oil Co.*, 208 AD2d 615 [self-service gas station hose]).

Here, although the door in the Clairol Salon was used by employees and clients, the malfunctioning pivot hinge was concealed when the door was closed and was also located too high up to be within easy reach of anyone without a stepladder. This lessens the likelihood that an employee or a member of the public tampered with it. Further, Mr. Laevsky's submission of repair orders after plaintiff's accident suggests that Bristol-Myers was the party responsible for any necessary maintenance and inspection of the hinge. "The defendant, whose employees took possession of the [defective object] immediately after the accident, offered no evidence to support an inference of some other possible cause for the accident, such as a manufacturing design defect" (*Finocchio v Crest Hollow Club*, *supra*, at 493).

Defendant Rudin, while joining in Bristol-Myers' arguments that the claim should be dismissed, alternatively argues that

at any rate it is entitled to summary judgment against Bristol-Myers for indemnification because the defective instrumentality (whether defined as the door or the hinge) was within the tenant's control. As an out-of-possession landlord, Rudin correctly claims it should not be held liable, since the lease placed responsibility for everyday maintenance and repairs on the tenant. Since the broken hinge was not a significant structural defect, and plaintiff did not point to any specific statutory violations to support her claim that Rudin breached a duty of care (*compare, Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559),[2] Rudin cannot be charged with constructive notice solely based on its right of re-entry (*DiRende v Cipollaro*, 234 AD2d 78, *lv denied* 90 NY2d 806).

Under a res ipsa loquitur theory, moreover, even assuming that the hinge was defective in some way, it was the tenant Bristol-Myers who initiated the renovations and took responsibility for hiring the contractors who installed the door. Summary judgment should therefore be granted on Rudin's cross-motion for common-law and contractual indemnification (*Ameri v Diane Young Skincare Ctr.*, 170 AD2d 280, 281, *lv denied* 81 NY2d 709). Concur—Milonas, J. P., Rosenberger, Wallach and Williams, JJ.

---

2. The Labor Law sections belatedly cited by plaintiff were all inapposite to this type of workplace or the circumstances of this accident.