[718 NYS2d 287]

MICHAEL R. PAPPALARDO, Appellant, v NEW YORK HEALTH &
RACQUET CLUB et al., Respondents.

First Department, December 12, 2000

**APPEARANCES OF COUNSEL**

*James M. Lane* of counsel (*Brian J. Shoot* and *Diane W. Bando* on the brief; *Schneider Kleinick Weitz Damashek & Shoot,* attorneys), for appellant.

*Barry Jacobs* of counsel (*Thurm & Heller, L. L. P.,* attorneys), for New York Health & Racquet Club, respondent.

*Edward Owen* of counsel (*Turner & Owen,* attorneys), for Pan Am Equities, Inc. and another, respondents.

**OPINION OF THE COURT**

NARDELLI, J. P.

In this appeal, we are called upon to determine whether a property owner and/or a lessee may be held liable in negligence for a purported defect in the demised premises in light of the somewhat unique circumstances of this case.

Defendant The New York Health & Racquet Club (HRC) is the lessee of the basement, first, second and third floors in the building designated as 24 East 13th Street, New York, New York (the building), and operates a health and fitness center therein (the premises). The building is owned by defendant Fraydun Manocherian and defendant Pan Am Equities, Inc. is the managing agent. Plaintiff Michael R. Pappalardo was a member of HRC and on January 21, 1996, he accompanied his friend, Cheryl Joseph, to the premises to work out.

Plaintiff was using a "leg curl" machine which was located in a room on the second floor of the premises. The machine was one in a row of approximately 10 exercise machines which ran parallel to a large window overlooking East 13th Street. The window was approximately five feet in height and eight feet in width, with the bottom edge less than 18 inches above the

floor. The machine is operated by using one's legs to lift weights while laying on his/her stomach, and the machine was situated so that the individual using it faced the window. Testimony varied as to the distance between the machine and the window, and ranged from 18 inches to three feet, which, according to the testimony of Ms. Joseph, included a sill or frame of a few inches in width. In any event, both plaintiff and Ms. Joseph agree that the space was not sufficient to constitute an aisle or walkway.

Plaintiff, after concluding one set of repetitions, dismounted the machine and stepped aside so Ms. Joseph could begin exercising. At this point, plaintiff, in order to find room in the crowded club to stretch his hamstrings, moved to the area near the window, standing either directly in front of the machine Ms. Joseph occupied or near the front of it and slightly off to one side, with his back to the window. Plaintiff then noticed that his shoelace was untied and, while he "stepped back to tie [the] shoe," either bending over or squatting, the glass behind him shattered and he fell to the pavement below. Initially, at an examination before trial conducted on July 28, 1997, plaintiff testified that no part of his body came into contact with the glass. In a subsequent affidavit sworn to on July 13, 1998, plaintiff averred that his "buttocks brushed against the window" and "that [the window] instantly and simultaneously shattered."

This action was commenced in or about August 1996 by the service of a summons and verified complaint, which interposed one scattershot cause of action sounding in negligence. Among the allegations against defendants contained therein are that they were negligent: in failing to maintain the windows in a safe and proper condition; in failing to make structural repairs and maintain the windows; in failing to provide warning devices or barricades in front of the windows; in causing and maintaining a trap; and in failing to comply with unspecified statutes and codes. Plaintiff, subsequent to the commencement of discovery, failed to disclose certain information concerning his expert, Stanley Fein's, testimony and as a result, the IAS Court limited the subject matter to which Fein could testify to the "measurements, width of glass and dimensions of windows." No appeal was taken from that order.

Defendants thereafter moved and cross-moved for summary judgment dismissing the complaint on the grounds, *inter alia*: that there was no evidence that the window was defective or that they had actual or constructive notice of a defect; that

plaintiff's fall was not foreseeable; and, with regard to HRC, that it was not responsible for the maintenance of the windows.

Plaintiff cross-moved for summary judgment on the issue of liability and argued that the windows were too thin, in violation of the Administrative Code of the City of New York, and that the violation defined the defendants' duty, the breach of that duty, and notice. Plaintiff also contended that defendants violated their common-law duty to maintain reasonably safe premises and that the doctrine of res ipsa loquitur applies to this case, thereby shifting the burden upon defendants to refute the inference of negligence.

In a decision and order entered on December 16, 1998, Justice Solomon, *inter alia*, granted the defendants' motion and cross motion and dismissed the complaint, finding: that the defendants had neither actual nor constructive notice of the allegedly dangerous condition; that the plaintiff failed to establish the applicability of the various cited provisions of the Administrative Code; and that the doctrine of res ipsa loquitur did not apply.

In his cross motion before the IAS Court, plaintiff's primary argument revolved around the contention that the window, which "exploded," was comprised of improperly thin, non-safety glass in contravention of the Administrative Code. Indeed, plaintiff provides a laundry list of Administrative Code sections of which defendants purportedly ran afoul. Plaintiff further maintains that because of changes made in the Certificate of Occupancy, defendants were responsible for "bring[ing] the building up to Code."

The IAS Court found, however, that plaintiff failed to proffer any evidence indicating that the Administrative Code sections in question, which became effective in December 1968, applied to this building. Specifically, the IAS Court noted that it was unknown when the building was constructed, or the date and cost of renovations performed by the defendants, all of which are necessary to determine the applicability of the relevant Administrative Code provisions.

Administrative Code § 27-111 grandfathered any lawful use and occupancy existing on the effective date of the Administrative Code provisions in question, and provides:

> "The lawful occupancy and use of any building, including the use of any service equipment therein, existing on the effective date of this code or there-after constructed or installed in accordance with

prior code requirements, as provided in section 27-105 of article one of this subchapter, may be continued unless a retroactive change is specifically required by the provisions of this code."

On appeal, plaintiff specifically relies upon Administrative Code § 27-118 (a), which states:

"Except as otherwise provided for in this section, if the alteration of a building or space therein results in a change in the occupancy group classification of the building under the provisions of subchapter three, then the entire building shall be made to comply with the requirements of this code."

Plaintiff, in relying on this subdivision, concedes that it incorporates, by reference, Administrative Code §§ 27-115 through 27-117 (see, Administrative Code § 27-118 [c]), which provide that section 27-118 does not apply unless the cost of renovations exceeds a certain percentage of the value of the building.

■ Initially, defendants urge that we reject plaintiff's argument on the grounds that it has not been preserved for our review because it was not raised before the motion court. While it does appear, from a perusal of the record, that references to Administrative Code §§ 27-115 through 27-118 are nowhere to be found in plaintiff's submissions to the IAS Court, plaintiff does refer to changes in the Certificate of Occupancy and then makes reference to the fact that defendants, in remodeling the building to accommodate the health club, changed the occupancy group classification. Plaintiff also specifically cites to Administrative Code § 27-111 in his cross-moving papers, which provides that any lawful use and occupancy prior to its effective date is grandfathered unless a retroactive change is specifically required by the provisions of the Administrative Code, implicitly referring to, inter alia, sections 27-115 through 27-118. Interestingly, paragraph 4 of the Altered Building Application submitted to the City of New York Housing and Development Administration by the owner defendants states that the work was done under the "new" (post) 1968 Building Code. Further, the foregoing references by plaintiff in his moving papers were sufficient to put the IAS Court on notice of sections 27-115 through 27-118, to which plaintiff now specifically alludes, as the court pointedly made findings that plaintiff failed to proffer evidence satisfying the requirements of those sections. We, therefore, reject defendants' argument of lack of preservation.

■ Having done so, we now find that the motion court improperly placed the burden of establishing the applicability of the Administrative Code to the building upon plaintiff. It is well settled that in order to prevail on a motion for summary judgment, the moving party must demonstrate entitlement to judgment as a matter of law (*Zuckerman v City of New York*, 49 NY2d 557, 562; *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395), and the failure to make such a showing will result in the denial of the motion, regardless of the sufficiency of the opposing papers (*Lesocovich v 180 Madison Ave. Corp.*, 81 NY2d 982, 985; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853). In *Ferrante v American Lung Assn.* (90 NY2d 623, 630), the Court of Appeals recently opined that a defendant moving for summary judgment should not confuse plaintiff's ultimate burden with the showing needed to withstand a summary judgment motion as, generally, a plaintiff is not required to prove his/her claim to defeat such a motion (*see also, Zuckerman v City of New York, supra*, at 562). Indeed, in *Lesocovich v 180 Madison Ave. Corp.* (185 AD2d 599, *revd* 81 NY2d 982), Justice Levine, in a case factually similar to this one, held, in his dissenting opinion in which Justice Mahoney concurred, that the burden is on defendant owner as the proponent of a motion for summary judgment to make out a prima facie defense by submitting proof in admissible form eliminating any issue as to the applicability of the Administrative Code to the building in question (*id.*, at 604). The Court of Appeals agreed that triable issues of fact existed as to, *inter alia*, "whether the alterations and repairs made to the premises brought it within the purview of the Code" (*id.*, at 985).

Here, plaintiff has proffered evidence indicating that costly alterations were made to the premises which resulted in a change in the occupancy group classification, as well as documentary evidence indicating that defendants themselves, at least at some point, believed the 1968 Code applied, while defendants, who are certainly in a better position to obtain documentation concerning the alterations, their costs and the value of the building, have remained silent. As a result, we conclude that issues of fact exist as to whether the premises fall within the purview of the cited sections of the Administrative Code and, if so, whether the window, and the lack of safety rails, violated any of those provisions cited by plaintiff.

■ With regard to the owner's and managing agent's claim that they cannot be held liable, generally, an out-of-possession

landlord will not be held liable for a third party's injuries on its premises unless the landlord has notice of the defect and has consented to be responsible for maintenance or repair (*Manning v New York Tel. Co.*, 157 AD2d 264, 266-269; *Levy v Daitz*, 196 AD2d 454, 455). Constructive notice, however, can be found where the out-of-possession landlord reserves a right under the terms of a lease to enter the premises for the purpose of inspection and maintenance or repair and a specific statutory violation exists (*Velazquez v Tyler Graphics*, 214 AD2d 489; *Levy v Daitz, supra,* at 455-456).

Plaintiff, as previously discussed, has identified specific statutory violations (i.e., Administrative Code § 27-646, table 10-7 [that the glass was impermissibly thin]; § 27-651, table 10-9 [that the windows should have contained a grill or push bars]). Paragraph 7.01 of the Lease, under the heading of *Repairs*, provides, *inter alia*:

> "Tenant shall take good care of the demised premises and shall * * * make such repairs to the demised premises and the fixtures and appurtenances therein as are necessitated by the act, omission, occupancy or negligence of Tenant * * * *If Tenant fails to make such repairs, restoration or replacements, the same may be made by Landlord at the expense of Tenant* * * *
>
> *"The exterior walls of the Building, the portions of any window sills outside the windows, the windows * * * are not part of the premises demised by this Lease and Landlord reserves all rights to such parts of the Building."* (Emphasis added.)

Accordingly, the out-of-possession owners/landlords herein retained the rights to repair as well as rights to the exterior walls, including the windows, and may, therefore, be held liable. Further, this same provision places the initial obligation for maintenance and repair upon HRC.

Plaintiff also argues that notwithstanding the applicability of the Code provisions, he has stated a prima facie case of common-law negligence. Plaintiff correctly identifies the well-established principle that a landowner is under a duty to maintain its property in a reasonably safe condition under the existing circumstances, including the likelihood of injury to third parties, the potential that any such injury would be of a serious nature and the burden of avoiding the risk (*Basso v Miller*, 40 NY2d 233, 241). This duty, as we held in *O'Connor-*

*Miele v Barhite & Holzinger* (234 AD2d 106, 106-107), is tempered, and, in order to recover damages, a party must establish that the landlord created or had actual or constructive notice of the hazardous condition which precipitated the injury (*see also, Piacquadio v Recine Realty Corp.*, 84 NY2d 967, 969) and, further, by the rule that " '[t]o constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the owner's] employees to discovery and remedy it' " (*O'Connor-Miele v Barhite & Holzinger, supra*, at 106, quoting *Gordon v American Museum of Natural History*, 67 NY2d 836, 837; *see also, O'Neill v Maiara*, 267 AD2d 440; *Freidah v Hamlet Golf & Country Club*, 272 AD2d 572).

In the matter at bar, plaintiff has provided no proof, nor has he alleged, that defendants installed the window or had actual knowledge of a defect.[1] Further, there is no indication, absent the alleged statutory violations, that the defect was visible or apparent so as to constitute constructive notice. As a result, we find that absent the statutory violations, plaintiff's common-law negligence claim must fail.

■ Finally, plaintiff argued before the motion court that defendants were liable for his injuries pursuant to the doctrine of res ipsa loquitur.[2] Under this doctrine, an inference of negligence may be drawn from the very occurrence of an accident and defendants' relation to it (*Rountree v Manhattan & Bronx Surface Tr. Operating Auth.*, 261 AD2d 324, 326, *lv denied* 94 NY2d 754; *Pavon v Rudin*, 254 AD2d 143; Restatement [Second] of Torts § 328D, comments *a*, *b*). The plaintiff, in invoking the doctrine, must establish: (1) the accident must be of a kind that ordinarily does not occur in the absence of negligence; (2) the instrumentality or agency causing the accident must be in the exclusive control of the defendants; and (3) the accident must not be due to any voluntary action or contribution by plaintiff (*Kambat v St. Francis Hosp.*, 89 NY2d 489, 494; *Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226; *Rountree v Manhattan & Bronx Surface Tr. Operating Auth., supra*, at 326). If all of the requirements are met, a plaintiff may rest on circumstantial evidence when the cause of the accident is unknown (*Kambat v St. Francis Hosp., supra*, at 494).

---

1. Plaintiff, in fact, acknowledged in his brief that "[t]he window was the original glass in place when defendants assumed ownership and control of the premises in or about 1972."

2. Plaintiff appeals from "each and every part of [the motion court's] order," but makes no mention of this argument in his appellate briefs.

The plaintiff herein, at the very least, has failed to establish the third element of the doctrine as he acknowledges that his buttocks brushed against the glass as the window simultaneously exploded. Indeed, in support of plaintiff's cross motion, plaintiff's attorney averred that "[t]he window did not just explode but failed because it was brushed by plaintiff's buttocks." We conclude, therefore, that the doctrine is inapplicable under the facts presented.

Accordingly, the order of the Supreme Court, New York County (Jane Solomon, J.), entered December 16, 1998, which, *inter alia*, granted defendants' motions for summary judgment and dismissed the complaint, should be modified, on the law, the motion denied, and the complaint reinstated to the extent that it asserts a negligence claim arising out of statutory violations, and otherwise affirmed, without costs.

MAZZARELLI, J. (concurring in part and dissenting in part). I agree with the majority's conclusion that there are outstanding factual issues as to whether the renovation to the subject premises placed it within the purview of section 27-118 (a) of the Administrative Code of the City of New York, and, if so, whether the width of the window (*see*, Administrative Code § 27-646) or the lack of safety rails (*see*, Administrative Code § 27-651) violated those provisions. I also agree that under the lease terms, the out-of-possession owners/landlords and the lessee defendant New York Health & Racquet Club may be held liable for the cited Administrative Code violations.

However, I disagree with the majority's conclusion that plaintiff did not set forth a prima facie claim of negligence under the theory of res ipsa loquitur. Res ipsa is an evidentiary rule which allows for the use of circumstantial evidence to make out a prima facie case of negligence sufficient for submission to the jury (*Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226; *Bressler v New York R.T. Corp.*, 277 NY 200 [res ipsa applicable where passenger on subway was injured by shattering of glass window]).

I would find that plaintiff properly asserted sufficient facts in opposition to defendants' motion for summary judgment (*see*, *Pavon v Rudin*, 254 AD2d 143) for the doctrine of res ipsa to be applied in this case. Res ipsa can be utilized where: (1) the accident is of a kind that ordinarily does not occur in the absence of negligence; (2) the instrumentality causing the accident was within defendant's exclusive control; and (3) the accident was not due to any voluntary action or contribution of plaintiff.

In this case, the *only* evidence of any contact between the plaintiff and the window comes from plaintiff's affidavit, in which he states that "I believe my buttocks brushed against the window as it exploded." The following is plaintiff's testimony at his examination before trial:

"Q. When you got into the position you described for us to tie your shoe, did any portion of your body come in contact with the glass?

"A. No. [A]ll I heard was a shatter. I wish I knew to be honest with you. It's the weirdest thing that's ever happened to me."

At her examination before trial, Cheryl Joseph, who was working out with plaintiff, testified as follows:

"Q. What did you see happen to the glass?

"A. I saw the glass pop and shatter. I mean, it —just behind it, the pane just fell out, but not as a solid unit, as pieces.

"Q. Just before you observed that, did you hear anything unusual? Before you heard the pop and shatter of the glass, had you heard anything, while you were in that area, come into contact with the glass?

"A. No."

There is nothing in the record which indicates that any force was exerted against the window.

Thus, in this case, element one is satisfied because absent evidence of excessive force, brushing against a properly installed, secure window would not normally cause it to shatter. Indeed, windows must be sturdy enough to endure contact such as cleaning or painting the frame. These activities necessarily involve more than a mere "brushing" against the window. As to the second element, the "exclusive control" requirement, this has not been applied literally, nor as a rigid, fixed, mechanical rule (*see, Dermatossian v New York City Tr. Auth., supra,* at 227). To establish exclusive control, plaintiff need not demonstrate that defendants had sole physical access to the instrumentality. Plaintiff must show only that the evidence " 'afford[s] a rational basis for concluding that the cause of the accident was probably "such that the defendant[s] would be responsible for any negligence connected with it" ' " (*id.,* at 227 [citations omitted]; *Finocchio v Crest Hollow Club,* 184

AD2d 491, 492-493 ["sudden collapse (of a chair under restaurant's exclusive control), under normal usage, was most likely caused by the defendant's negligence"]). The windows at the health club here, like the chairs in *Finocchio*, were within defendants' exclusive control and thus element two is made out.

In its discussion of the third element, the majority contends that plaintiff's brushing against the window negates the conclusion that the accident was not due to any voluntary action or contribution of plaintiff. This, in my view, is an overly restrictive construction of the res ipsa doctrine. "[P]laintiff need not conclusively eliminate all other possible explanations [for the accident]. It is enough to present evidence from which a reasonable jury could conclude that it is more likely than not that defendant's negligence caused the injury (*Kambat v St. Francis Hosp.*, [89 NY2d 489,] 494 [res ipsa applied where a laparotomy pad was discovered inside a patient who had undergone a hysterectomy])" (*Pavon v Rudin, supra*, at 145 [res ipsa properly applied where plaintiff was hit by a door with a malfunctioning pivot hinge]).

Patrons of a health club regularly move around the Nautilus machines to alternate repetitions, to stretch or to chat with others. Moreover, with the machines being located near the window, often as a form of advertising to entice passersby, it is natural to expect that someone would brush up against the glass. As stated before, there was no evidence in the record that plaintiff collided with or exerted undue force or pressure on the window. The facts of the accident here, as developed at this stage in the litigation, do not exclude the application of res ipsa, and for the inference that it was more likely than not that the shattering of the glass was caused by defendants' negligence (*Bressler v New York R. T. Corp., supra*; *Dawson v National Amusements*, 259 AD2d 329 [res ipsa applicable to sustain a complaint against the owner of a movie theater, where plaintiff's chair collapsed approximately one hour into a movie]; *see also, Reynolds v Boylston Realty*, 267 AD2d 70 [same]).

TOM and ANDRIAS, JJ., concur with NARDELLI, J. P.; MAZZARELLI and BUCKLEY, JJ., concur in part and dissent in part in a separate opinion by MAZZARELLI, J.

Order, Supreme Court, New York County, entered December 16, 1998, modified, on the law, defendants' motions for summary judgment to dismiss the complaint denied, the complaint

reinstated to the extent that it asserts a negligence claim arising out of statutory violations, and otherwise affirmed, without costs.