■ ROSEMOND BARNEY-YEBOAH, Appellant, v METRO-NORTH COMMUTER RAILROAD, Respondent. [992 NYS2d 215]—

Order, Supreme Court, New York County (Joan A. Madden, J.), entered January 10, 2013, which denied plaintiff's motion for partial summary judgment on the issue of liability, reversed, on the law and the facts, without costs, and the motion granted.

Plaintiff, a passenger on defendant's train, was allegedly injured when a ceiling panel in the train car swung open and

struck her in the head. Plaintiff testified that she was seated on the train when she heard a loud sound, and the next thing she knew, she was on her knees with people around her yelling. After the commotion, she looked up and saw a hanging panel—a cabinet utility door that had hit her in the head.

The motion court improperly denied plaintiff's motion on the issue of liability based on the doctrine of res ipsa loquitur. While summary judgment is rarely granted in res ipsa loquitur cases, it is appropriate in "exceptional case[s]," such as this one, where "the plaintiff's circumstantial proof is so convincing and the defendant's response so weak that the inference of defendant's negligence is inescapable" (*Morejon v Rais Constr. Co.*, 7 NY3d 203, 209-212 [2006]).

To demonstrate a claim under the doctrine, a plaintiff must establish three elements: (1) the accident is of a kind that ordinarily does not occur in the absence of defendant's negligence; (2) the instrumentality causing the accident was within defendant's exclusive control; and (3) the accident was not due to any voluntary action or contribution by plaintiff (*see Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226 [1986]).

Plaintiff met all three elements with her submission of witness testimony and the testimony of defendant's foreman. The foreman testified that the train's HVAC and ventilation system was accessible through the ceiling panel that hit plaintiff. He also testified that to his knowledge, no one but defendant's personnel accessed the ceiling panels and that he had no explanation for how the accident occurred. The foreman described the panel as being fastened to the ceiling with four screws outside and two safety latches and a safety chain inside.

Defendant concedes the first and third elements but argues that it did not have exclusive control over the ceiling panels. However, defendant offers no evidence to support its argument. Rather, defendant simply offers its attorney's affirmation, in which counsel opines that "the only logical conclusion," considering the foreman's testimony, was that the accident occurred because of tampering by unauthorized individuals. This statement, which amounts to no more than counsel's speculation about what might have happened, is insufficient to defeat plaintiff's motion (*see Dillenberger v 74 Fifth Ave. Owners Corp.*, 155 AD2d 327 [1st Dept 1989]). This conclusion holds especially true here, where defendant's own foreman testified that to his knowledge, no one but defendant's personnel accessed the ceiling panels. Indeed, that the panel somehow became dislodged after Metro-North employees worked on the HVAC or ventila-

tion system is a far more "logical conclusion" than the one counsel offers—namely, that "someone other than a Metro-North employee" must have tampered with the ceiling panel while on the train.

*Pavon v Rudin* (254 AD2d 143 [1st Dept 1998]) and *Nesbit v New York City Tr. Auth.* (170 AD2d 92 [1st Dept 1991]) are both directly on point. In *Nesbit*, the plaintiff's decedent was walking on the sidewalk when he was struck on the head by a bar and safety chain that fell from the defendant's elevated subway train (170 AD2d at 94). The safety chain and bar had been attached to the train between two of its cars (*id.*). The trial court submitted the case to the jury on a res ipsa theory.

We held that the court erroneously set aside the plaintiff's jury verdict and directed judgment for the defendant. In so doing, we noted that "[n]o evidence of tampering or tools were found between the cars with the missing chains, and no witnesses ever testified to seeing some unidentified vandal tampering with the chain" between the cars (*id.* at 98). Under these circumstances, we found, "Certainly, one can infer it was 'probably' defendant's negligence which caused the occurrence, and the evidence shows it was *not* 'equally probable' that the negligence was that of another without any requirement that other possibilities be excluded altogether" (*id.* at 99). Thus, we found that the jury had clearly considered but rejected the defendant's "theory of the 'phantom vandal' " where there was no evidence that an unknown passenger or vandal had tampered with the train's safety chain (*id.* at 96, 98).

Defendant's opposition to the motion for summary judgment here suffers from precisely the same deficiency. Indeed, as in *Nesbit*, the utility door in this case had multiple safety mechanisms—screws, safety latches, and a safety chain—all of which apparently failed. Neither defendant nor the dissent offers any reason to accept the unlikely hypothesis that a train passenger "had the tools or inclination to stand . . . in view of the other passengers" and tamper with the utility door (*see Nesbit*, 170 AD2d at 96).

In *Pavon*, the plaintiff, while working at the defendants' premises, was injured when she was allegedly struck on the head by a heavy seven-foot-high door that had apparently dislodged from its top pivot hinge (254 AD2d at 143). We reversed the motion court's grant of summary judgment to defendants, finding that the plaintiff had established a triable issue based on a res ipsa theory. In so doing, we noted that the motion court, in determining the issue of defendants' exclusive control, improperly focused on the door that fell on the plaintiff,

rather than the more appropriate inquiry of whether the door's hinge itself "was generally handled by the public" (*id.* at 146). Similarly, here, defendant offered no evidence suggesting that Metro-North passengers generally handled the overhead panel.

On the issue of exclusive control, the dissent relies on *Dermatossian v New York City Tr. Auth.* (67 NY2d 219 [1986]), for the proposition that where there is "extensive public contact with an instrumentality," we must not assume a defendant's exclusive control. In *Dermatossian,* the plaintiff was injured when he struck his head on a defective grab handle as he stood to leave a city bus (*id.* at 221). However, unlike *Dermatossian,* where the grab handle was "continuously available for use by defendant's passengers," here, the panel that allegedly struck plaintiff was fixed to the ceiling of the train car (*id.* at 228). Indeed, defendant's train passengers were not similarly "invited to use" the ceiling panel as they were the grab handle in the city bus and there is nothing more than defense counsel's speculation to suggest that someone other than defendant's employees touched or accessed the panel. Concur—Mazzarelli, J.P., Moskowitz, Manzanet-Daniels and Kapnick, JJ.

DeGrasse, J., dissents in a memorandum as follows: Contrary to what the majority has determined, the motion court properly denied plaintiff's motion for summary judgment on the issue of liability. Plaintiff, a passenger on a crowded commuter train, was injured when a ceiling panel swung open and struck her head. Plaintiff invoked the doctrine of res ipsa loquitur as the only ground for summary judgment. Res ipsa loquitur is an evidentiary doctrine that permits an inference of negligence "solely from the happening of the accident upon the theory that 'certain occurrences contain within themselves a sufficient basis for an inference of negligence' " (*Dermatossian v New York City Tr. Auth.,* 67 NY2d 219, 226 [1986] [citation omitted]). The majority correctly recites the three elements that must be established to warrant the submission of a case to a jury on the theory of res ipsa loquitur (*see id.*). I dissent because there is a triable issue of fact as to whether, under the second element, the accident was caused "by an agency or instrumentality within the exclusive control of the defendant" (*id.* [citation omitted]).

As noted above, this case involves an event that occurred within a commuter train car. It cannot be assumed that a common carrier, such as defendant, has exclusive control over its facilities that are accessible to the riding public. *Dermatossian* is on point. The plaintiff in *Dermatossian* was struck in the head by a defective grab handle on a city bus. The case against the Transit Authority was submitted to the jury under the theory of

res ipsa loquitur. In reversing the judgment entered on the plaintiff's verdict and ordering the dismissal of the complaint, the Court found that "[t]he proof did not adequately exclude the *chance* that the handle had been damaged by one or more of defendant's passengers who were invited to use it" (*Dermatossian*, 67 NY2d at 228 [emphasis added]). Where there is extensive public contact with an instrumentality, the standard articulated by *Dermatossian* is one of "sufficient exclusivity to fairly rule out the *chance* that [a defect] was caused by some agency other than defendant's negligence" (*id.* [emphasis added]; *see also Ebanks v New York City Tr. Auth.*, 70 NY2d 621, 623 [1987]).

A foreman, who was deposed on behalf of defendant, testified that the ceiling panel could have been loosened by use of a standard flathead screwdriver. Given the exposure of the panel to daily public contact, the majority misplaces its reliance on the foreman's testimony that "to his knowledge," no one other than defendant's employees accessed the ceiling panels. Contrary to the majority's view, this testimony is insufficient to establish defendant's exclusive control of the publicly accessible ceiling panel as a matter of law. Like the proof considered by the Court in *Dermatossian*, the foreman's testimony does not adequately exclude the chance that the panel had been loosened by one or more of defendant's passengers (67 NY2d at 228; *see also Bazne v Port Auth. of N.Y. & N.J.*, 61 AD3d 583 [1st Dept 2009]). By application of *Dermatossian*, it was plaintiff's burden to establish the absence of a triable issue of fact as to whether there was any chance that the panel had been loosened by another passenger. This is because plaintiff made the underlying motion for summary judgment. This distinction seems to have eluded the majority as evidenced by its belief that *Pavon v Rudin* (254 AD2d 143 [1st Dept 1998]) is "directly on point."* In *Pavon*, we reversed an order that granted the defendants' motion for summary judgment, finding the record sufficient to warrant submission of the case to a jury on the theory of res ipsa loquitur. In so doing, we noted that in order to raise an issue of fact under the doctrine it was "not necessary for plaintiff to rule out all other possible causes [other than defendants' negligence], only to show that they are less likely" (*id.* at 145 [citation omitted]). Here, by contrast, the majority's grant of summary judgment in favor of plaintiff amounts to a finding

---

* *Nesbit v New York City Tr. Auth.* (170 AD2d 92 [1st Dept 1991]), another case the majority relies upon, is even more distinguishable because it involves a post-trial motion to set aside a jury's verdict, implicating standards that have no application to a motion for summary judgment.

that defendant's negligence is the only possible cause of the accident. In my view, such a finding is not supported by the record. In addition, the instant motion for summary judgment does not call for a determination of which party has proffered the more "logical conclusion," as the majority seems to suggest. The question is whether there exists a triable issue of fact.

Moreover, given the fact that the ceiling panel was within the reach of any passenger on the commuter train, the majority misplaces its reliance on the absence of evidence that passengers "generally handled the overhead panel." *Bazne*, for example, involved a bus terminal escalator that shook suddenly and stopped, causing the plaintiff to fall (61 AD3d at 583). In affirming an order granting the defendant's motion for summary judgment, we found res ipsa loquitur inapplicable in light of the extensive daily public contact with the escalator (*id.* at 583-584). The result reached in this case cannot be reconciled with our decision in *Bazne* in which there is no indication that the component parts of the malfunctioning escalator were handled by members of the public (*see also Parris v Port of N.Y. Auth.*, 47 AD3d 460 [1st Dept 2008]). Accordingly, this case should not have given us occasion to depart from the general rule that "only in the rarest of res ipsa loquitur cases may a plaintiff win summary judgment or a directed verdict" (*Morejon v Rais Constr. Co.*, 7 NY3d 203, 209 [2006]).