■ ALLEN HYMAN et al., Appellants, v QUEENS COUNTY BANCORP, INC., Doing Business as QUEENS COUNTY SAVINGS BANK, Respondent. [763 NYS2d 669] —In an action to recover damages for personal injuries, etc., the plaintiffs appeal from (1) an order of the Supreme Court, Queens County (Weiss, J.), dated May 24, 2001, which granted the defendant's motion for summary judgment dismissing the complaint, and (2) an order of the same court dated November 5, 2001, which denied their motion, denominated as one for leave to renew and reargue, but in actuality was for leave to reargue.

Ordered that the appeal from the order dated November 5, 2001, is dismissed, as no appeal lies from an order denying reargument; and it is further,

Ordered that the order dated May 24, 2001, is affirmed; and it is further,

Ordered that one bill of costs is awarded to the defendant.

On the morning of February 22, 1999, the injured plaintiff, Allen Hyman (hereinafter the plaintiff), visited a branch of the Queens County Savings Bank located on Northern Boulevard in Queens. The defendant bank had operated a branch at this location since 1974. To reach his safe deposit box on the lower level of the bank, the injured plaintiff Allen Hyman began to descend a carpeted stairway, which he estimated to be 36 inches wide. However, at the very top of the stairs, as he was reaching for the first step, the plaintiff slipped and fell to the bottom landing. At his examination before trial, the plaintiff recalled that at the time of the accident, he was standing slightly to the right of the center of the stairway, and that there was a handrail on his left side which he was not using. When the plaintiff slipped, his body turned around so that he was facing the opposite direction, and he tried to grab the handrail, which was now on his right side. He was "not able to catch the handrail sufficiently" to stop his fall.

Shortly after the action was placed on the trial calendar, the defendant moved for summary judgment, contending that the plaintiff's deposition testimony did not indicate the existence of any dangerous or defective condition on the stairway which could have caused him to slip, and that photographs of the stairway established that no such condition existed. In opposition to the motion, the plaintiffs submitted the affidavit of an investigator who had recently measured the subject stairway, and found it to be 48 inches wide. Based upon this evidence, the plaintiffs' attorney argued that the failure to place handrails on both sides of the stairway violated a provision of the City of New York Building Code which requires stairs that are more than 44 inches wide to be equipped with handrails on both sides (see Administrative Code of City of NY § 27-375 [f]), and a similar provision of the State Uniform Fire Prevention and Building Code (see 9 NYCRR 735.3 [a] [10]). The defendant responded to this claim by offering evidence that alterations were performed to the bank premises in 1977, which resulted in the issuance of a new certificate of occupancy in 1978. The defendant maintained that the issuance of the certificate of occupancy demonstrated that the premises complied with all applicable building code requirements as of that date.

The defendant further contended that the plaintiffs failed to establish that it violated any building code provision in effect at the time the premises were renovated in 1977. The Supreme Court granted the defendant's motion for summary judgment, finding that there was no evidence of a defect on the stairway, and that the regulations allegedly violated by the defendant were inapplicable to the premises. We affirm.

The defendant sustained its initial burden of demonstrating its entitlement to summary judgment by submitting evidence, including the plaintiff's deposition testimony, which established that there was no defective condition on the stairway which could have caused him to trip (*see Capone v 450 Lexington Venture,* 300 AD2d 428 [2002]; *Colella v Marolla,* 299 AD2d 515 [2002]; *Brown-Phifer v Cross County Mall Multiplex,* 282 AD2d 564 [2001]). The burden thus shifted to the plaintiffs to demonstrate the existence of a triable issue of fact to preclude granting the defendant's motion (*see Zuckerman v City of New York,* 49 NY2d 557 [1980]). Although the plaintiffs argued in opposition that the failure to install a second handrail violated the city and state building codes, they offered no proof from which it could be inferred that the provisions they relied upon were in effect when the building was constructed at some time prior to 1974. Furthermore, while it is undisputed that renovations were performed to the premises in 1977, there is no evidence that these renovations were so substantial in nature that the defendant would have been required to bring the entire building into compliance with city and state building code regulations which existed at that time (*see* Administrative Code §§ 27-115, 27-118; 9 NYCRR 1231.3 [c]; *see also Vachon v State of New York,* 286 AD2d 528 [2001]). Moreover, the certificate of occupancy issued by the New York City Department of Buildings in 1978 certified that the premises "conforms substantially to the approved plans and specifications and to the requirements of all applicable laws, rules and regulations of the uses and occupancies specified herein." Accordingly, the plaintiffs failed to raise a triable issue of fact as to whether the failure to provide a second handrail violated either the city or state building code (*see Beecher v Northern Men's Sauna,* 272 AD2d 281 [2000]).

Furthermore, even if a building code violation had been established, we do not agree with the dissent's view that an issue of fact exists as to whether the lack of a second handrail was a proximate cause of the injured plaintiff's fall. At his deposition, the injured plaintiff testified that he was standing near the center of the stairway when he slipped, and that when his

body turned around, he reached for the existing handrail which was now on his right, but was unable to catch it sufficiently to stop his fall. Under these circumstances, it would be sheer speculation for a jury to find that the presence of a second handrail would have prevented the injured plaintiff from falling (see *Bitterman v Grotyohann,* 295 AD2d 383 [2002]; *Vachon v State of New York, supra; Beecher v Northern Men's Sauna, supra).* The fact that the subject stairway was equipped with a single handrail, which the injured plaintiff was not using as he began to descend the steps, distinguishes this case from the cases cited by the dissent, *Kanarvogel v Tops Appliance City* (271 AD2d 409 [2000]) and *Hotzoglou v Hotzoglou* (221 AD2d 594 [1995]), where no handrail at all was available to the plaintiffs. Smith, J.P., Krausman and Rivera, JJ., concur.

Goldstein, J., concurs in part and dissents in part, and votes to dismiss the appeal from the order dated November 5, 2001, reverse the order dated May 24, 2001, on the law, and deny the defendant's motion for summary judgment, with the following memorandum, in which Townes, J., concurs: The injured plaintiff fell down stairs leading to a safe deposit vault at the defendant bank. At his examination before trial, he testified that the stairway had only one handrail to his left as he descended. The injured plaintiff, carrying nothing in his hands, attempted to descend the staircase from a position "slightly to the right of the middle." He claimed that initially he did not grasp the handrail which was on the left side of the staircase because "it would be a little bit of a stretch. It would not be a natural way to descend the stairs." When he started to fall, he reached for the handrail, but was unable to catch hold of it.

In their verified bill of particulars dated January 31, 1999, the plaintiffs alleged that the defendant failed "to have a proper bannister in place along the stairway" and failed "to comply with * * * New York State and New York City Codes regarding bannisters," citing Administrative Code of City of New York § 27-375 (f).

Thereafter, by notice of motion dated March 21, 2001, the defendant moved for summary judgment, contending that the injured plaintiff failed to identify a defect on the stairway which caused him to fall. In support of its motion, the defendant submitted a copy of the plaintiffs' verified bill of particulars and the injured plaintiffs' examination before trial. The plaintiffs, in opposition, submitted evidence in admissible form that the stairway was 48 inches wide. The plaintiffs alleged that the single handrail violated 9 NYCRR 735.3 (a) (10) requiring handrails on both sides of a stairway 44 inches or

more in width. The defendant, in reply, asserted that 9 NYCRR 735.3 (a) (10) was not applicable to the instant stairway, on the ground that that provision "apparently became effective" in 1995 after the building was "renovated" in 1977. The defendant contended that the plaintiffs failed to establish that the building was "in violation of any section existing at the time the building was renovated." The defendant further contended that issuance of a certificate of occupancy in 1978 constituted proof that the building complied with all relevant building code provisions at the time it was issued.

The Supreme Court granted the defendant's motion for summary judgment dismissing the complaint, finding that the regulation was inapplicable on the ground that it "was amended a number of times subsequent to the renovation" in 1977.

The proper inquiry is whether the provisions requiring handrails on both sides of the stairway were in effect at the time of the renovation, namely 1977 (see Zangara v Swierszcz, 298 AD2d 889 [2002]). The question of the effective date of these provisions is a question of law, not of fact. Accordingly, neither party bore the burden of proof on this issue, which is the province of the courts to determine (see McIntosh v Moscrip, 138 AD2d 781, 782 [1988]).

The State Building Construction Code in effect in 1977 required two handrails (see former State Building Construction Code § C 212-4.1 [k]), as did the New York City Building Code (see former Administrative Code of City of NY § C26-604.8 [f]). The applicable provision of the New York City Building Code was in effect in 1968 (see Local Law No. 76 [1968] of City of NY).

The majority states that summary judgment was properly granted to the defendant since the plaintiffs failed to establish that the 1977 renovation was "so substantial in nature" as to require compliance with the city and state building codes. However, this issue was not before the Supreme Court. In any event, the defendant, as movant and owner of the building, bore the burden of establishing as a matter of law that the building code provisions in issue were not applicable to its building (see Pappalardo v New York Health & Racquet Club, 279 AD2d 134, 140 [2000]; Hotzoglou v Hotzoglou, 221 AD2d 594 [1995]). The defendant was "certainly in a better position to obtain documentation concerning the alterations, their costs and the value of the building" in order to establish that the renovation was not substantial enough to require compliance with applicable building code provisions (Pappalardo v New

*York Health & Racquet Club, supra* at 140). The defendant did not raise such an allegation and relied instead upon the certificate of occupancy issued in 1978 as proof that the renovation did in fact comply with applicable building code provisions.

Contrary to the defendant's contention, issuance of a certificate of occupancy does not preclude a finding of negligence based upon the existence of building code violations (*see Cirino v Greek Orthodox Community of Yonkers,* 193 AD2d 576 [1993]). The fact that the City of New York issued a certificate of occupancy is not proof that the building complied with all applicable building code provisions at the time the certificate was issued (*see Garrett v Holiday Inns,* 58 NY2d 253 [1983]; *Clinton v McKeon,* 174 AD2d 153 [1992]). *Beecher v Northern Men's Sauna* (272 AD2d 281 [2000]), cited by the majority, does not support the defendant's contention.

On the issue of proximate cause, the injured plaintiff's deposition testimony that he reached out for a handrail constituted proof in admissible form that the failure to provide handrails on both sides of the stairway may have been a proximate cause of the accident (*see Hotzoglou v Hotzoglou, supra; Kanarvogel v Tops Appliance City,* 271 AD2d 409 [2000]). Since the plaintiff was carrying nothing in his hands, there was nothing to prevent him from grasping a handrail if one had been present on the side of the stairway closest to him (*see Lattimore v Falcone,* 35 AD2d 1069 [1970]).

The majority notes that the injured plaintiff was "not using" the existing handrail at the time he began to descend the steps. In order to do so, he would have had to hug the left side of a stairway wide enough for two-way traffic. The injured plaintiff noted at his deposition that this was not "a natural way to descend the stairs." One cannot infer from these facts that if a handrail were provided on the right side of the stairway, the injured plaintiff would not have used it.

Accordingly, the defendant's motion for summary judgment should have been denied.