■ KISNET BROOKS, Respondent, v MAINTENANCE SERVICE RESOURCES, INC., Defendant and Third-Party Plaintiff-Respondent-Appellant. ALLIED EXTERMINATING, Third-Party Defendant-Appellant-Respondent. [844 NYS2d 139]—

In an action to recover damages for personal injuries, the third-party defendant appeals, as limited by its brief, from so much of an interlocutory judgment of the Supreme Court, Kings County (Bunyan, J.), dated June 28, 2005, as, upon a jury verdict finding it 40% at fault in the happening of the accident and the defendant third-party plaintiff 60% at fault in the happening of the accident, directed that the defendant third-party plaintiff

may collect 40% of the amount to be paid to the plaintiff from the third-party defendant after a retrial on damages, and the defendant third-party plaintiff cross-appeals, as limited by its brief, from so much of the same interlocutory judgment as granted the plaintiff judgment against it for 100% of any damages verdict after a retrial on damages.

Ordered that the interlocutory judgment is reversed, on the law, with one bill of costs payable to the defendant third-party plaintiff and the third-party defendant, the complaint and the third-party complaint are dismissed, and an order of the same court dated December 23, 2004, and an amended order of the same court dated January 24, 2005, disposing of posttrial motions (*see Brooks v Maintenance Serv. Resources, Inc.*, 44 AD3d 886 [2007] [decided herewith]), are vacated.

On the evening of March 3, 1995 the plaintiff, who was at work, was injured when she stepped into an opening in a "raised floor" in her office. The nonparty building owner leased the premises to the plaintiff's employer, nonparty HIP of Greater New York (hereinafter HIP). The evidence at trial showed that the opening was made by workers who were employed by nonparty Universal Builders & Developers Corp. (hereinafter Universal). The evidence also showed that workers who were employed by the third-party defendant, Allied Exterminating (hereinafter Allied), who were in the plaintiff's office that evening to perform a "mouse clean-out," and who needed access to the area underneath the raised floor, had asked Universal's workers to make various openings in the raised floor.

Allied had been hired by the defendant third-party plaintiff, Maintenance Service Resources, Inc. (hereinafter Maintenance), which, pursuant to a contract with HIP, provided maintenance and pest control services for the building's tenants, such as the plaintiff's employer. Universal had been hired by the plaintiff's employer to assist Allied. The plaintiff commenced the instant action against Maintenance, seeking to recover damages for her personal injuries. Maintenance, in turn, commenced a third-party action against Allied, seeking contribution or indemnification.

After a trial, the jury found, inter alia, that Allied and Maintenance were both negligent. However, viewing the evidence in the light most favorable to the plaintiff, we find that there was simply no valid line of reasoning or permissible inferences from which the jury could conclude that Maintenance was negligent (*see Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]).

Contrary to the plaintiff's contention, there was no evidence from which the jury could rationally have concluded that Main-

tenance was actively negligent by failing to keep the plaintiff's office in a safe condition, as Maintenance did not own or occupy the office (cf. *Slatsky v Great Neck Plumbing Supply, Inc.,* 29 AD3d 776, 777 [2006]), or have a maintenance obligation that was so "comprehensive and exclusive" that it could be considered to have assumed a duty to keep the office safe (*Espinal v Melville Snow Contrs.,* 98 NY2d 136, 141 [2002]). Maintenance did not direct, supervise, or control the work of Allied or Universal, and was not present when the floor hatches were created and left unattended. Absent negligence on the part of Maintenance, the plaintiff cannot recover damages as a noncontracting party (*see Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579, 587 [1994]; *Crosby v Ogden Servs. Corp.,* 236 AD2d 220 [1997]).

Accordingly, the complaint should have been dismissed (*see Cohen v Hallmark Cards,* 45 NY2d at 496). In light of this conclusion, the third-party complaint also should have been dismissed, as the plaintiff asserted no direct action against Allied.

In light of our determination, the remaining contentions of Allied and Maintenance have been rendered academic. Schmidt, J.P., Mastro and Dillon, JJ., concur.

Fisher, J. (dissenting and voting to modify the interlocutory judgment by deleting the provisions thereof awarding the plaintiff judgment against the defendant third-party plaintiff, Maintenance Service Resources, Inc., for 100% of any damages verdict entered upon a retrial on damages, and directing that the defendant third-party plaintiff, Maintenance Service Resources, Inc., may collect 40% of the amount to be paid to the plaintiff from the third-party defendant, Allied Exterminating, and substituting therefor provisions directing a new trial only on the issue of the apportionment of fault among the defendant third-party plaintiff, Maintenance Service Resources, Inc., the third-party defendant, Allied Exterminating, and the nonparty Universal Builders & Developers Corp., and granting the plaintiff judgment against the defendant third-party plaintiff, Maintenance Service Resources, Inc., in accordance with the provisions of CPLR 1601 with respect to any damages verdict entered upon retrial on the issue of damages and, as so modified, to affirm the interlocutory judgment): Because, in my view, the liability verdicts in this case were supported by legally sufficient evidence and were not against the weight of the evidence, I respectfully dissent.

On March 3, 1995 the plaintiff, Kisnet Brooks worked for HIP of Greater New York (hereinafter HIP), which occupied,

inter alia, the tenth floor of a building located at 7 West 34th Street in Manhattan. HIP's offices were open 24 hours a day. The plaintiff's regular work shift was from 4:30 P.M. until 1:30 A.M., with a one-hour break at approximately 10:30 p.m. On the night of the accident, the plaintiff arrived at work, and took her break as scheduled. She had not been advised that any maintenance would be performed in the office that night. Upon re-entering HIP's offices after her break, she walked down a hallway, and, as she turned a corner, she stepped into an unguarded opening in the raised floor. There were no warning signs or barricades to indicate the presence of the opening, which apparently had been created during the plaintiff's break.

Unbeknownst to the plaintiff, maintenance contractors were performing a "rodent clean-out" that night—a procedure which necessarily called for the removal of certain floor tiles, so that exterminators could access areas under the raised floor where rodents were likely to be found. The opening left by the removal of each floor tile measured approximately four square feet, and had a depth of several inches. The plaintiff fell into one such opening.

Pursuant to the lease entered into between HIP and the owner of the building, HIP was solely responsible, inter alia, for pest control in the demised premises. HIP retained the defendant third-party plaintiff, Maintenance Service Resources, Inc. (hereinafter Maintenance), to provide daily maintenance and security services for the entire leased premises, as well as "complete" exterminating services. In turn, Maintenance subcontracted the pest control work to the third-party defendant, Allied Exterminating (hereinafter Allied).

In addition to its regularly-scheduled pest control work, Maintenance would also provide "special" services, such as rodent clean-outs, either when requested by HIP, or whenever Maintenance proposed such work and HIP approved it. When a rodent clean-out was needed, Maintenance directed Allied to perform the work, and HIP retained a separate contractor to remove carpeting and floor tiles so that Allied personnel could access the areas beneath the raised floor.

On the night of the accident, HIP retained Universal Builders & Developers Corp. (hereinafter Universal), a nonparty, to assist Allied by lifting certain floor tiles in the plaintiff's work area. Allied had seven or eight employees working in the building that night, with approximately half assigned to work on the plaintiff's floor. Universal had approximately two to four employees on site. Allied and Universal worked as a team. Allied would direct Universal to create an opening at specified loca-

tions, and then treat and bait the area in the open floor. Once Allied finished its work at that location, it instructed Universal to close the opening. As many as three or four openings might remain open at any given time.

The owner of Allied Andrew Klein testified that his employees were supposed to remain at the location of an opening until a Universal employee arrived to close it, and that it would be improper for Allied to "just walk away" from an opening unless someone from Universal was already there to close it. By contrast, the Allied employee who supervised the actual work that night, Richard Rodriguez, testified that Allied personnel simply called out for a Universal employee to come and close the opening, and then left immediately for the next location.

Based on the foregoing evidence, the jury found Maintenance liable to the plaintiff on the complaint, and Allied liable to Maintenance for contribution in the third-party action. Contrary to the views expressed by my colleagues, I find that the plaintiff established a prima facie case of negligence against Maintenance, and that Maintenance, in turn, established a prima facie case against Allied for contribution (cf. McDermott v City of New York, 201 AD2d 339 [1994]). In my view, the evidence adduced at trial was sufficient to permit a rational jury to conclude that Maintenance had contractually assumed from HIP complete responsibility over pest control work in the leased premises (see Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579 [1994]; Crosby v Ogden Servs. Corp., 236 AD2d 220 [1997]). The evidence further showed that Maintenance knew that certain parts of HIP's offices were opened 24 hours a day, and that a rodent clean-out operation—which would require creating up to 30 to 40 openings in the floor—was scheduled on the night of the accident. Maintenance, however, "never gave a thought" as to whether or not there might be HIP employees working in the area that night, despite knowledge that the work called for the creation of several openings in the floor of an active workplace—arguably a "process fraught with potential danger" to the affected employees (Rohlfs v Weil, 271 NY 444, 448 [1936]; cf. Rosenberg v Equitable Life Assur. Socy. of U.S., 79 NY2d 663, 669-670 [1992]; Beck v Woodward Affiliates, 226 AD2d 328, 330 [1996]; Lockowitz v Melnyk, 1 AD2d 138, 139-140 [1956]). Moreover, a jury, based on the evidence adduced at trial, could rationally conclude that Allied, in its capacity as Maintenance's subcontractor, was negligent in failing to guard the opening into which the plaintiff fell. In sum, I conclude that the plaintiff's liability verdict against Maintenance, as well as Maintenance's liability verdict against Allied on the third-party contribution

claim, were supported by legally sufficient evidence (see *Cohen v Hallmark Cards,* 45 NY2d 493, 499 [1978]), and were not against the weight of the evidence (see *Nicastro v Park,* 113 AD2d 129 [1985]).

Nevertheless, a new trial only on the issue of apportionment of fault among Maintenance, Allied, and Universal is required as a result of the trial court's refusal, over Allied's objection, to have the jury determine the percentage of fault, if any, attributable to the nonparty Universal (see CPLR 1601; *Roseboro v New York City Tr. Auth.,* 286 AD2d 222 [2001]).