OPINION OF THE COURT
Judith J. Gische, J.
This is an action for monetary damages arising from allegations by the plaintiffs that they sustained personal injuries as a result of bedbug bites they received while they were guests at a hotel located in Manhattan. In a case of apparent first impression in New York State, plaintiffs seek punitive damages against both defendants who are, respectively, the hotel owner (Milford Plaza) and the exterminators with whom the hotel has a service contract (PAC or exterminator). Plaintiffs Debra Grogan and Dana Grogan are, respectively, a mother and her adult daughter.
Issue has been joined in this case and the note of issue was already filed. Discovery is now complete. The court has before it a timely motion by Milford Plaza and cross motion by PAC for summary judgment, which plaintiffs oppose. These motions will be considered together and decided on the merits. (CPLR 3212; Brill v City of New York, 2 NY3d 648 [2004].) The court’s decision and order is as follows:
Arguments
Plaintiffs were guests at the Milford Plaza in room 1540 on the 15th floor. Mrs. Grogan checked in on January 17, 2003 and stayed one night in the room by herself on one of two beds in the room. Her daughter, Dana, checked in the next day on January 18th. Mrs. Grogan was deposed and she testified at her examination before trial (EBT) that when she awoke on the morning of January 18th she noticed some red marks or welts on her chest which had not been there the night before. Mrs. Grogan did not report these marks to anyone at the hotel.
The Grogans went to bed that night, but were awakened at about 4:00 a.m. when Dana jumped out of bed, flung back the covers, and turned on the lights. Mrs. Grogan testified at her *800 EBT that she saw many bugs on Dana’s bed (50-100) between the sheet and the blanket. The sheet had bloody smears on it and there were some bugs crawling up the wall. She also noticed a live bug on Dana’s hand. Mrs. Grogan described these bugs as being brown, flat and elongated with a little red dot in the middle.
Dana was also deposed. She testified that she was awakened from a deep sleep by something biting at her. When she turned on the light she saw crushed bugs and some live bugs around her. There were blood splats on the sheets from where she had rolled over some of the bugs during the night while sleeping. She also saw some smears of blood on her hand. Many bugs were still alive, and she estimated there were between 40 to 50 of them. She described the bugs as being brown. When asked by defendant’s counsel how big they were, Dana approximated the size with her forefinger and thumb. Counsel for the Milford Plaza then indicated: “let the record reflect she is making an inch between her fingers.” When asked the width, Dana again motioned with her fingers and answered “skinny. I don’t know. Like this.” That night, following the Grogans’ complaint to hotel staff, they were moved to another room on a different floor.
Milford Plaza and PAC, the exterminator, each contend they have a complete defense to plaintiffs’ claims against them and they are each entitled to summary judgment. While presenting some complimentary defenses, they also have cross claims against one another, and, therefore, also present other, separate, defenses unique to each one of them. Their arguments are addressed by the court collectively, except where one states a separate defense or argument.
Both defendants argue that the plaintiffs were not bitten by bedbugs because the insects they have described are too big to be bedbugs. Defendants contend that bedbugs are barely visible and that it is impossible for the Grogans to have seen them so easily. They make these statements in their attorneys’ affirmation and the exterminator also provides, and relies upon, an article from the New York Times real estate section about bedbugs.
Alternatively, defendants argue that even if the Grogans were bitten by bedbugs, neither defendants had received complaints of bedbugs in room 1540 prior to the stay by the Grogans in that room. Thus, both defendants deny they had notice or sufficient time to address the unsafe condition complained of by plaintiffs.
*801 Both defendants argue that they were not negligent and they aggressively targeted pests of all kinds, including bedbugs, at the hotel. Both contend the seriousness of this responsibility is evident in the service contract the hotel has with the exterminator.
Defendants, however, present separate defenses as to whether either of them owed a duty to the Grogans in the first place and whether it was breached. The hotel, without conceding any liability, does not apparently deny having a duty to provide the Grogans with a reasonably safe room, or even a room that was reasonably free of pests. Milford Plaza, however, contends that it took concrete steps to have the rooms at the hotel inspected whenever it received any complaint about bedbugs and that it deferred to the expertise of its exterminator about how to handle (destroy) any bedbugs that were found. Milford Plaza contends that the exterminator was empowered to take whatever steps were necessary to do its job as exterminator, and the hotel relies upon the EBT testimony of PAC’s principal, Mr. Stravino, who testified that PAC was present at the hotel on a daily basis. Milford Plaza contends it never restricted PAC’s access to any hotel room, or instructed any of its staff how to do their job.
PAC contends that it did not owe the Grogans a duty of care, and, in any event, it fulfilled its duties under its service contract with Milford Plaza. It denies any obligation to either have inspected room 1540 prior to the Grogans’ stay to determine whether there were bedbugs in that room because there were no prior complaints about bedbugs in that room, nor had the Milford Plaza provided them an extermination work ticket for that room. It is PAC’s contention that by fulfilling work tickets to exterminate bedbugs in any one particular room, it did not have any further obligation to check adjacent, adjoining, or contiguous rooms for bedbugs, unless it was directed to by Milford Plaza. PAC denies that the Milford Plaza ever asked it to exterminate room 1540 prior to January 19th, or that it had the independent discretion to exterminate it, unless it was provided with a work ticket. The exterminator provides and relies upon the EBT testimony of Mr. Melendez, Milford Plaza’s chief engineer. Mr. Melendez testified that exterminators were not allowed into hotel rooms, unless someone went with them to unlock them.
Both defendants urge the court to dismiss plaintiffs’ ancillary claim for punitive damages even if plaintiffs’ underlying negligence claims against them are allowed to proceed. Defen *802 dants contend that even if plaintiffs can prove all their claims at trial, they cannot meet the very high threshold that is set for recovery of punitive damages. They contend that they acted reasonably in handling complaints about bedbugs, and even plaintiffs’ own expert (discussed later in this decision) acknowledges the difficulty inherent in completely eradicating these pests. They contend there is no proof they did anything intentional or deliberate to deceive guests so as to warrant the imposition of punitive damages, and the plaintiffs have not suffered any lasting physical injuries, assuming they were damaged at all.
In opposition to defendants’ motions, plaintiffs argue that there are factual disputes for trial. Among these factual issues are whether the defendants properly exterminated rooms that were found to have bedbugs. Plaintiffs contend that the defendants did not have a comprehensive plan of extermination and all they did was chase bedbugs from one room to another. The plaintiffs further contend that rooms were often rented out to guests before bedbugs were completely eliminated from those rooms. Plaintiffs argue that the defendants should have, but failed to, check contiguous rooms, or other rooms on the same floor where live bedbugs were found.
In support of these claims, and to establish issues of fact, plaintiffs rely upon the sworn affidavit of Robert J. Novak, a professor of medicine who also has a doctorate in entomology. Novak prepared a report on plaintiffs’ behalf. In his affidavit, Novak describes the life cycle of bedbugs. He opines that the bugs that bit Dana and her mother were bedbugs, based on what they testified at their EBTs. Novak contends that bedbugs feed at night and that the events Dana described are consistent with how bedbugs behave, and what bedbug bites look like. Novak opines that although bedbugs are small, they are visible to the naked eye. Novak opines that such pests can easily travel from room to room through a variety of ways, including the holes that cable wires run through. Thus, he contends the defendants were on notice that if there was a bedbug problem in one room, then adjacent or contiguous rooms, or even rooms on several floors above and below, could have bedbugs in them also. Novak opines that proper eradication techniques require an inspection beyond the immediate site where the bedbugs are observed.
Plaintiffs contend that the bedbugs were indeed small, but they could see them very vividly because of their stark contrast *803 against the sheets and because of the smears of blood. They contend they may have exaggerated their size, but this was because they were both groggy when they woke up and the bugs had a profound emotional effect on them upon being jolted awake in the middle of the night.
In support of their punitive damages claims, plaintiffs contend that the presence of bedbugs was tolerated and defendants’ indifference to this condition is evident from their haphazard procedures in treating infected rooms and those adjacent and/or near them. To support these claims, plaintiffs rely upon the extermination work tickets issued by the hotel to the exterminator, and testimony by witnesses on behalf of each defendant.
Plaintiffs contend that PAC’s extermination tickets for the end of December 2002 (shortly before the Grogans’ stay at the hotel) show there were live, “active” bedbugs in rooms 1511 and 1512. Plaintiffs contend that although defendants had actual notice of bedbugs on the 15th floor, they failed to take proper steps to investigate whether room 1540 (or any other room on the 15th floor) had bedbugs in it. Plaintiffs contend that defendants’ failure to do so was a reckless, intentional and wanton act which supports their claim for punitive damages. Plaintiffs contend that the hotel completely abdicated its responsibility to monitor the safety of its rooms to PAC and PAC was equally, wantonly and recklessly negligent in how it treated rooms. Plaintiffs cite the EBT testimony of Mr. Melendez who testified on behalf of the Milford Plaza that if the exterminator reported there was nothing (no bugs, vermin, etc.) in a room, “[he] wouldn’t question it further.”
While acknowledging that no other court in New York State has awarded punitive damages for damage sustained as a result of bedbug bites, plaintiffs nonetheless contend exemplary damages warranted, not only because bedbugs are pests and it is against public policy to tolerate pests, but also because there is legal precedent elsewhere for such an award. Plaintiffs urge the court to consider the decision in Mathias v Accor Economy Lodging, Inc. (347 F3d 672 [7th Cir 2003]), in which the jury’s award of punitive damages to a hotel guest was upheld. In Mathias, the court found that plaintiffs had proved the hotel had deceived guests into believing they were renting a clean and safe room, when in fact virtually all the rooms were teeming with bedbugs. The court found that the infestation was very well known to the hotel staff, but they were under strict instructions to rent out the rooms anyway, even though their exterminator notified them *804 of the heavy infestation and quoted a reasonable price ($500) to fumigate the entire premises. Rather than pay the fee, or keep rooms closed, the hotel preferred to give quick refunds whenever a guest complained about seeing or being bitten by bedbugs.
In reply and in further support of their motions, defendants argue that Novak is not a qualified expert and his affidavit should not be considered for that reason and also because he never physically inspected room 1540, or any other room at the Milford Plaza. Alternatively, defendants argue that Novak’s opinion is actually helpful to them because he agrees that bedbugs are virtually indestructible. Defendants contend that the methods advocated by Novak are impractical and he does not have the expertise to state what safe eradication methods are.
Law Applicable to Summary Judgment Motions
“The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].) Once met, this burden shifts to the opposing party who must then demonstrate the existence of a triable issue of fact. (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Zuckerman v City of New York, 49 NY2d 557 [1980].) A party may not defeat a motion for summary judgment with bare allegations of unsubstantiated facts. (Zuckerman v City of New York at 563-564.)
When an issue of law is raised in connection with a motion for summary judgment, the court may and should resolve it without the need for a testimonial hearing. (See Hindes v Weisz, 303 AD2d 459 [2d Dept 2003].)
Discussion
Usually disputes about the eradication of vermin and pests (including bedbugs) arise in the context of landlord/tenant proceedings, where a tenant is seeking an abatement in rent for an alleged breach of the warranty of habitability. (Solow v Wellner, 86 NY2d 582 [1995]; Ludlow Props., LLC v Young, 4 Misc 3d 515 [Civ Ct, NY County 2004].) Though the relationship among the plaintiffs and the hotel owner is that of lessor and lessee, no argument is presented that there are any health codes, ordinances, statutes or other standards applicable to the facts of this particular case, or that the defendants have violated any of them, if they do apply. Plaintiffs’ theory of liability is that this *805 is a premises negligence case in which the defendants either created a dangerous or unsafe condition, or had actual or constructive notice of the condition, and that such defects are visible and apparent. (Segretti v Shorenstein Co., E., 256 AD2d 234 [1st Dept 1998].) The defendants, while denying any liability, do not dispute that these are the elements that have to be established by plaintiff at trial or disproved by them in connection with their motions for summary judgment now before the court.
At the outset, the court addresses defendants’ argument about their respective duties of care. A landowner is under a nondelegable duty to maintain its property in a reasonably safe condition under existing circumstances, which includes the likelihood of injury to a third party. (Perez v Bronx Park S. Assoc., 285 AD2d 402 [1st Dept 2001].) This common-law duty is tempered by a requirement that a plaintiff seeking recovery must establish that the landlord created or had actual or constructive notice of the hazardous condition which precipitated the injury. (Pappalardo v New York Health & Racquet Club, 279 AD2d 134 [1st Dept 2000].) To constitute constructive notice, a defect must be visible and apparent, and it must have existed for a sufficient length of time prior to the accident for the owner to have discovered the defect and remedied it. (Pappalardo, supra.) A party injured by the owner’s failure to fulfill its duty may recover from the owner even though the responsibility for maintenance has been transferred to another. (Mas v Two Bridges Assoc., 75 NY2d 680, 687 [1990]; Ortiz v Fifth Ave. Bldg. Assoc., 251 AD2d 200 [1998]; Pares v Taino Towers, 17 Misc 3d 1125[A], 2007 NY Slip Op 52145[U] [Sup Ct, NY County 2007], and cases cited therein.)
The Milford Plaza, as owner and manager of the hotel, owed plaintiffs the duty of providing them with accommodations that were in a reasonably safe condition. (Kane v Ten Eyck Co., 10 Misc 2d 398 [Sup Ct, Albany County 1943], affd 267 App Div 789 [3d Dept 1943], affd 292 NY 701 [1944]; Jungjohann v Hotel Buffalo, 5 AD2d 496 [4th Dept 1958].) It is plaintiffs’ contention that the room was unsafe and they sustained physical injuries. Thus, to prevail on its motion for summary judgment, Milford Plaza has to prove, as a matter of law, that it did not breach its duty of care to plaintiffs.
With respect to PAC, there is a factual dispute whether PAC assumed a duty of care to plaintiffs under its service contract with the Milford Plaza. It is for the jury to decide whether PAC’s *806 maintenance obligation was so “comprehensive and exclusive” that it could be considered to have assumed a duty to keep rooms at the hotel, including room 1540, in a reasonably safe condition. (Brooks v Maintenance Serv. Resources, Inc., 44 AD3d 887, 889 [2d Dept 2007], citing Espinal v Melville Snow Contrs., 98 NY2d 136, 141 [2002].)
There is the separate issue of whether the Milford Plaza properly supervised the manner in which PAC executed its obligations under its service contract or completely abdicated its responsibility to an exterminator who applied haphazard procedures. Plaintiffs and Milford Plaza contend that under the hotel’s service contract, PAC had free reign to exterminate rooms, decide when they needed to be taken out of service, and when to put them back in service. Moreover, PAC also had its own duty to exercise due care in executing its obligations under the service contract. (Averill v Estate of Judson I. Cohen, NYLJ, May 3, 1989, at 29, col 3 [Sup Ct, Westchester County] [allegations that exterminator did not eliminate termites].) There are issues of fact whether PAC was only required to do what it was instructed to do, or whether it had independent discretion to take other actions, if needed. (Mercado v Slope Assoc., 246 AD2d 581 [2d Dept 1998].)
Defendants have also failed to prove that they are entitled to summary judgment because they did not have prior notice of an unsafe or dangerous condition at the premises. Even assuming that no guests complained about bedbugs in room 1540 prior to the date of plaintiffs’ stay in that room, plaintiffs have raised issues of fact whether defendants had constructive notice that bedbugs might have or could spread to room 1540. There is evidence in the form of extermination reports tending to show that there were complaints of bedbugs in other parts of the hotel and even on the 15th floor, several weeks before plaintiffs checked into room 1540. The affidavit of Novak sets forth genuine issues of fact about the life span of bedbugs, how they migrate, and whether these factors should have been (or were) taken into consideration by the defendants in how rooms were treated following bedbug complaints by other guests.
Although defendants attack Novak’s credentials, they have not offered their own expert affidavit to refute Novak’s opinions, or described the credentials that a qualified expert would have. Moreover, Novak may render his opinion based upon facts otherwise developed in the record. Thus, the argument that Novak did not physically inspect the Milford Plaza is unavailing to *807 discredit him as a matter of law. (Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639 [1994].)
In any event, defendants have not met their own burden of proving they are entitled to summary judgment, thereby shifting the burden to plaintiffs. (Alvarez v Prospect Hosp., supra; Zuckerman v City of New York, supra.) Since neither defendant has proved there are no factual issues for trial, the motion and cross motion for summary judgment on the issue of liability are denied.
Punitive Damages
Defendants contend that even if plaintiffs prevail on their claims, they are not entitled to punitive damages. Punitive damages, also known as “exemplary damages,” may be awarded in circumstances where the defendant acted with such a high degree of bad faith, and their wrongful act was so wanton, reckless, or malicious, that its actions are intentional, deliberate and therefore reprehensible to society as a whole. (See Home Ins. Co. v American Home Prods. Corp., 75 NY2d 196, 200 [1990]; Rivera v City of New York, 40 AD3d 334, 344 [1st Dept 2007]; Freeman v Port Auth. of N.Y. & N.J., 243 AD2d 409, 410 [1st Dept 1997]; Aero Garage Corp. v Hirschfeld, 185 AD2d 775 [1st Dept 1992].) Thus, the actions rise almost to the level of a crime. (Liberman v Riverside Mem. Chapel, 225 AD2d 283 [1st Dept 1996].)
There is no like case reported in New York State and the holding in Mathias is distinguishable. In upholding an award of punitive damages in the Mathias case, the U.S. Court of Appeals, Seventh Circuit, held that the “deliberate exposure of hotel guests to the health risks created by insect infestations exposes the hotel’s owner to sanctions under Illinois and Chicago law that in the aggregate are comparable in severity to the punitive damage award in this case.” (Mathias v Accor Economy Lodging, Inc., 347 F3d at 678, referring to 720 Ill Comp Stat 5/12-5 [a], [b]; 730 Ill Comp Stat S/5-8-3 [a] [1]; 5/5-9-1 [a] [2], and Chicago Mun Code §§ 4-4-280, 4-208-020, 050, 060, 110.) Thus, the Mathias case, unlike the case at bar, involved violations of a state statute and a city code. The court imposed punitive damages because violations of that law and code also satisfied the high threshold for enhanced damages.
Moreover, Mathias is factually distinguishable from the instant case. In Mathias, the hotel had rented out rooms, knowing they had live, active, and feeding bedbugs. Management preferred to gamble on whether a guest would complain. If she *808 or he did, then the guest was quickly offered a refund. The Court of Appeals upheld the award of punitive damages ($5,000) after a jury trial deciding that the failure to warn guests about bedbugs “amounted to [a] fraud and probably [a] battery as well” (347 F3d at 675). Thus, the Mathias jury was faced with a premises owner who made a deliberate business decision to conceal an unsafe condition at the premises from its guests for pecuniary gain. At bar, the issues of culpability relate to negligence only.
“On a motion for summary judgment attacking the sufficiency of the complaint, the facts are construed in a light most favorable to the party opposing the motion, which is entitled to all reasonable inferences that can be derived therefrom.” (Ansonia Assoc. Ltd. Partnership v Public Serv. Mut. Ins. Co., 257 AD2d 84, 89 [1st Dept 1999] [citations omitted].) Even were plaintiff to prove all her facts at trial, they would not support the award of punitive damages by a reasonable jury. The actions by defendant do not rise to the level of being a reckless or a conscious disregard of the rights of others. (Hartford Acc. & Indem. Co. v Village of Hempstead, 48 NY2d 218 [1979].) Punitive damages are not available for ordinary negligence. In order to recover punitive damages, a plaintiff must establish by clear, unequivocal and convincing evidence, “egregious and willful conduct” that is “morally culpable, or is actuated by evil and reprehensible motives.” (Munoz v Puretz, 301 AD2d 382, 384 [1st Dept 2003] [citations omitted].) In opposition to defendants’ motions, even accepting all of their facts as true, plaintiffs have failed to lay bare any additional proof of their claim for enhanced or exemplary damages.
While bedbugs feed on their prey (humans) by penetrating the skin, leaving behind welts and red marks, plaintiffs have failed to raise a triable issue of fact whether bedbugs are anything more than a nuisance. According to the New York City Department of Health and Mental Hygiene “Bed Bug Fact Sheet,” bedbugs do not spread disease, (http://www.nyc.gov/ html/doh/html/vector/vector-faq 1. shtml.) Moreover, the New York City Health Department recommends that anyone with bedbugs hire a pest control professional, and the hotel had a service contract with an exterminator. (Id.) Therefore, plaintiffs have not only failed to raise a triable issue of fact whether the presence of bedbugs violates any applicable health code, ordinance or statute, they have also failed to raise triable issues of fact whether the defendants acted with such reckless abandon *809 that punitive damages are available. (Compare Mathias v Accor Economy Lodging, Inc., supra [health code violations]; Ludlow Props., LLC v Young, supra [breach of warranty of habitability; tenant entitled to rent abatement for constructive eviction].) There being no factual allegations to support plaintiffs’ punitive damages claim, it is hereby severed and dismissed, as a matter of law.
Conclusion
The motion by Milford Plaza and cross motion by PAC to dismiss the first, second and third causes of action are denied as there are material issues of fact for trial. However, with respect to the fourth cause of action, insofar as it seeks an award of punitive damages, the motion and cross motion for summary judgment dismissing that claim is granted. The claim for punitive damages is hereby severed and dismissed.